CENTER & TREADWELL, plaintiffs in error, vs. LARKIN H. DAVIS, defendant in error.

1. Davis, the landlord, on the 4th day of June, 1859, entered into a written contract with Center & Treadwell to rent to them a store-room then in the process of building, in the city of Atlanta, for the term of one year, for the sum of eight hundred dollars *per annum*, with the privilege of renting said store-room for three additional years at the same rate, and Davis, the landlord, stipulated, on his part, to have said store-room *well fitted up, ready for use* by the second Monday in August, 1859,'' and the tenants went into possession of the store-room after its erection, occupied it for one year, and, in pursuance of the original contract between the parties, rented the store-room for another year. After the making of the rent contract, Davis, the landlord, proceeded to erect over the store-room rented to Center & Treadwell, and over the adjoining store-room, rented to another tenant, a boarding house and kitchen, the boarding house in front of the building, and the kitchen over the back part thereof, and constructed a platform or walk over the valley between the two store-rooms, leading from the boarding house, so built over the store-rooms, to the kitchen. The landlord rented the boarding house, kitchen and fixtures, so erected over the store-rooms, to another tenant, who occupied the same. These fixtures were erected by the landlord when Center & Treadwell

Center & Treadwell *vs.* Davis.

renewed their lease for the second year under the original contract.  In consequence of the erection by the landlord of the buildings and fixtures over the store-room, and the use thereof by his tenants, to whom he rented the same, Center & Treadwell have been damaged by water thrown upon their goods in the store-room to the amount of twelve hundred dollars, as assessed by five merchants called on for that purpose :  *Held,* that inasmuch as the landlord stipulated in his contract to have the store-room *well fitted up and ready for the use of the plaintiffs,* if he afterwards erected obstructions over the building which caused them to be injured either by his own negligence, or that of his tenants or agents, in the use thereof, he is liable for the damages resulting therefrom.

2, *Held,* also, that the agreement of the tenants to make repairs, as stated in the record, extended only to ordinary repairs of the building, and did not extend to making repairs by removing *permanent fixtures* erected by the landlord from which the injury to the plaintiffs resulted.

3. The Court charged the jury :  "But the law does not require the landlord to sweep the premises and keep them clean while the tenant is occupying them ; this is the *tenant's business.*  If the house was properly built, and kept in repair, and if, being kept clean, no damage would have resulted, *defendant is not liable.*  If the kitchen overhead was built after the plaintiffs first went into the house, and they renewed their tenancy without objection, after it was built, the trouble of sweeping and keeping clean the premises is no matter of which plaintiffs could afterwards complain :"  *Held,* that this charge of the Court in view of the facts of this case, was erroneous and calculated to mislead the jury.  The plaintiffs were only tenants of the store-room which they rented ; they were only bound to sweep and keep that clean ; it was not their business or duty to sweep and keep clean the premises above them which caused the damage ; they had no legal right to go there for that purpose.  The landlord was bound by his contract to keep the store-house rented to the plaintiffs fit for the use for which he rented it to them, and if obstructions were placed there by himself, and used by his tenants, and such obstructions rendered the store-house unfit for the purposes for which it was rented, and damage resulted therefrom, the landlord is liable therefor, and the plaintiffs have the legal right to complain whenever damaged thereby, whether they renewed their tenancy under their original contract, after the creation of the obstructions by the landlord, or not.

(See dissentient opinion of BROWN, C. J.)

Landlord and tenant.   Motion for a new trial.   Before Judge POPE.   Fulton Superior Court.   October Term, 1868.

In June, 1859, Davis & Lester rented to Center & Treadwell a store-room in a building then being erected, agreeing that the room should be "well fitted up, ready for use by the second Monday in August, 1859." Center & Treadwell were to have it for one year from·said date in August, at $800 00 *per annum*, and to have the privilege of keeping it the three next years at the same price.

The building was completed, was three stories high in front, the second and third stories running back sixty feet. The first story contained two store-rooms, running back further than the upper stories. The roofs of these store-rooms, back of the upper stories, came together, and were connected by a tin valley, or gutter, to carry off the water which might fall on either roof.

Center & Treadwell took possession of one of these store-rooms under said lease. The upper ·stories were rented out as a boarding house, and a kitchen for this boarding-house was built at the back end of the building on the roofs of said stores. Cross pieces were put over the valley, and on them plank were laid down for a passway from the boarding house to the kitchen. From the roof, in the rear, steps let down to the ground. After the first year was out Center & Treadwell renewed the lease according to the privilege granted them. On the 7th of October, 1860, by reason of water coming through their roof their stock was damaged $1200 00, and they brought case against Davis & Lester for the damages. Lester was dead, and the cause proceeded against Davis, as survivor. At the trial there was no controversy as to the *quantum* of damages, nor as to the fact that the damages were caused by water coming through the roof. The evidence showed that the leakage was caused solely by the accumulation of trash, etc., thrown from the boarding house into the valley, daming up the water, and causing it to get out of the valley. The building of the kitchen had been commenced before Center & Treadwell took possession of their store-room, but was not finished till about two months thereafter, according to Davis' testimony, but other witnesses testified that the kitchen and passway were built after plain-

Center & Treadwell *vs.* Davis.

tiffs took possession. They having complained about the roof before the said day in October, 1860, (but when does not appear,) some arrangement was made as to repairs. One of the plaintiffs testified that the store-room was not tenantable with the kitchen and passway upon it; that Davis had been several times notified that the roof leaked, and was requested to repair it, and he instructed the witness to get a roofer and have it repaired; Davis did not tell him to make any repairs needed, but only to get the roofer, and charge the repairs to him; some repairs were then made, and charged to Davis, and he paid for them. The repairer testified that he went upon the roof, and finding that he could do nothing else to remedy the evil, and that the trash in the valley was the sole cause of it, simply cleaned out the valley. Davis testified that he was from home when the damaging leakage occurred; that before he left home plaintiffs had notified him that the roof was not in good order, and needed repairs, and he told them to have the repairs done, and they agreed to do so. Davis' son testified, that before his father left home he told him to tell the plaintiffs that if the house needed any repairs to have them made, and he did tell them.

Plaintiffs had no interest in any part of said building besides their store-room. The Court charged the jury : 1st. That under said contract it was defendant's duty to furnish to plaintiffs the store-room well fitted up for use; that these words were to be taken in their ordinary sense; that the house must be tenantable, and well fitted and adapted to the use for which it was intended. 2d. It was Davis' duty to keep it in repair, unless it was expressly agreed that plaintiffs should make all necessary repairs, and charge them to Davis; the law makes it the duty of landlords to keep rented premises in repair, and failing to do this thing, will be liable for all such damages resulting from such failure, as the tenant, after using due diligence to save his goods, might suffer.

3. If the tenant agreed to keep the house in repair, and failed to do it, and if his damages resulted from his own default in this respect, he cannot recover of the landlord; if the landlord did not furnish his tenant a good house, if it

was not tenantable, was not suited for the use intended, and the damages resulted from this cause, he is liable to plaintiffs for all damages resulting from such defect.

4. But the law does not require the landlord to sweep the premises and keep them clean while the tenant is occupying them; this is the tenant's business; if the house was properly built and kept in repair, and if being kept clean no damage would have resulted, defendant is not liable.

5. If the kitchen overhead was built after plaintiffs first went into the house, and they renewed their tenantcy without objections after it was built, the trouble of sweeping and keeping clean the premises is no matter of which plaintiffs could afterwards complain.

6. If the house was properly built and fitted up, and the damage resulted from want of repairs, and defendant should have made them, and if plaintiffs knew of the necessity of repairs, and defendant did not, it was plaintiffs' duty to notify defendant of the necessity, if they had a good opportunity to do so, and if plaintiffs failed to do their duty in this respect, they cannot recover."

The jury found for the defendant. Plaintiffs' attorneys moved for a new trial upon the ground that the Court erred in not adding to the first charge, that if the house was not so fitted up and tenantable, etc., they should find for the plaintiffs; that the third clause of the charge was wrong, because there was no evidence of a contract by plaintiff to do all necessary repairs and charge them to Davis; that the fourth clause was wrong, because plaintiffs were not shown to have any interest in or control over any part of the premises except their store-room; that the fifth clause was unwarranted by the evidence and contrary to law, and that the balance of the charge was erroneous, in that it failed to instruct the jury how to find in the cases therein supposed, and because that clause was contrary to law, and because the verdict was against equity, the weight of the testimony, etc.

This motion was overruled, and error is thereupon assigned on said several grounds.

Center & Treadwell *vs.* Davis.

J. M. CALHOUN & SON, for plaintiffs in error, cited as to 1st clause of the charge, 1 Starke's Ev., 6, as to the 3d, 7 Ga. R., 495; 8th, 114; 9th, 310; 13th, 46; as to the 4th, 14 Ga. R., 135; 15th, 258; 12th, 444; as to the 5th, the last cited cases, and 11 Ga. R., 337; as to landlord's duty and liability Code, section 2258; 2 Saund. Pl. and Ev., 686.

D. F. HAMMOND, for defendant, cited Parsons' on C, 589; 2 M. & W. R., 68; 9 Cush. R., 89; 2 Kelly's R., (Ga.) 26, 7 8; as to implied contract by landlord to fit premises for particular use, and said error, though the charge was wrong, the verdict was right and ought not to be disturbed; 6 Ga. R., 324; 10th, 429.

WARNER, J.

This is an action brought by the plaintiffs to recover damages from the defendant for injury done to their goods in a store-room rented by the plaintiffs of the defendant. On the 4th day of June, 1859, Davis, the defendant, entered into a written contract with the plaintiffs to rent them a store-room then in the process of building, in the city of Atlanta, for the term of one year for the sum of eight hundred dollars *per annum*, with the privilege of renting said store-room for three additional years, at the same rate, and Davis, the landlord, stipulated on his part, to have said store-room *well fitted up* and ready for use by the second Monday in August, 1859. The plaintiffs went into the possession of the store-room, as the tenants of Davis, under the contract, after its erection, occupied it for one year, and, in pursuance of the original contract between the parties, rented the store-room for another year. It appears from the record, that after making the rent contract, Davis, the landlord, proceeded to erect over the store-room rented to the plaintiffs, and over the adjoining store-room rented to another tenant, a boarding-house and kitchen; the boarding-house on the front part of the two store-rooms and the kitchen on the back part thereof, and constructed a platform, or walk, over

the valley between the roofs of the two store-rooms, leading from the boarding-house to the kitchen. Davis, the landlord, rented the boarding-house, kitchen, and fixtures, so erected over the store-rooms, to another tenant, who occupied the same as a boarding-house. The boarding-house, kitchen and fixtures, were erected over the store-rooms by the defendant when the plaintiffs renewed their lease for the second year, under the original contract. The evidence in the record shows, that in consequence of the erection by the defendant of the buildings and fixtures, over the store-rooms, and the use thereof by his tenants, to whom he rented the same, the plaintiffs have been damaged by the water thrown upon their goods in the store-room rented from the defendant, to the amount of twelve hundred dollars. On the trial of this case in the Court below, the jury found a verdict for the defendant, and the Court overruled a motion for a new trial, which is now assigned for error here.

The defendant erected the fixtures over the plaintiffs' store-room, and it is an indisputable fact, that the plaintiffs' goods have been damaged in consequence of the erection of such fixtures, either whilst the same were in the possession or control of the defendant, or whilst the same were in the possession or control of his agents and tenants; and *the* question is, whether the defendant is legally liable to the plaintiffs for the amount of damages which they have sustained, upon the facts, as stated in the record now before us. It is said that the defendant is not liable, because the damage was caused by the negligent conduct of the defendant's tenants, to whom he had rented the fixtures over the store-room, that the landlord is not liable to an action for a nuisance erected, or continued by his tenant on the premises rented, and that it was so held by this Court, in the case of *Vason vs. the City Council of Augusta*, 38 Ga. R., 542. In that case, Vason was prosecuted on the *criminal* side of the Court for a *public* nuisance, which affected the *public generally*, and in that case this Court very properly held, that the landlord was not liable to be indicted and punished for the *criminal* act of his tenant, with which he had no connection.

But the inquiry is made, what reason applies in favor of the exemption of the landlord in *that* case, that does not apply to him in *this* case? The simple answer is, that *this* is a *private* nuisance, *that* was a *public* nuisance. " Generally, a *public* nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the State. A *private* nuisance gives a right of action to the person injured:" Revised Code, section 2946. Blackstone says, " that the law gives no *private* remedy for anything but a *private* wrong; therefore, no *action* lies for a public or common nuisance, but an indictment only." 3 Bl. Com., 210. In the case of *the South Carolina Railroad Co., vs. Moore & Philpot,* 28 *Ga. R.,* 418, this Court said : " There is no dispute that the general rule of law is, that a *private* action will not lie for a *public* nuisance. It is the subject of *indictment* not of action." The distinction which the law makes between the two cases is this, that the landlord is not liable for the independent criminal act of his tenant in the erection or continuance of a *public* nuisance, but that he is liable to an action for damages for the erection or continuance of a *private* nuisance, either by himself, his agents, or tenants, whereby *private* individuals are injured. See Taylor's Landlord and Tenant, 129, section 206. In Rosewell vs. Prior, Salkeld 460, an action for the *continuance* of a nuisance was held to lie against the defendant, though he had *underlet* the building which was the subject of it, and though the plaintiff had recovered against him in a former action for the *erection* of the nuisance, for the Court said, " he affirmed the continuance by his *demise,* and received *rent* as a consideration for it." " So if a man recover against A for the *erection* of a nuisance, he may afterwards maintain an action against him for the *continuance,* though he has made a *lease of it to another*, or may have it against the lessee of A for the continuance at his election." 1st Comyn's Dig., 429, title Action on the case for a nuisance. See 2nd, Greenleaf's Ev., 385, section 472. In this case Davis, the landlord, *erected* the nuisance over the store-room of the plaintiffs which caused the damage, and *demised* the premises with the nuisance erected

thereon by himself, to his tenants, receiving *rent therefor*, and thus *continued* the nuisance. See Bush vs. Steinman, 1st, Bos. and Puller's R., 404. In the case of *Bonner vs. Well-born*, 7 *Ga. R.*, 296, this Court held *unanimously*, that an action could be maintained against the erection of a private nuisance by him who was the owner of the property damaged at the time of the erection of the nuisance. The plaintiffs in this case, rented the store-room of the defendant, and the injury resulting from the nuisance was a damage to *them* and not to their *alienee.* What is a nuisance ? " A nuisance is any thing that maketh hurt, inconvenience or damage to another, and the fact that the act may otherwise be lawful, does not keep it from being a nuisance. A private nuisance may injure either the person or property, or both, and in either case a right of action accrues." Revised Code, sections 2948, 2949. The defendant was the owner of the property at the time of the *erection* of the nuisance, and was the owner of it at the time of the damage caused by it to the plaintiffs, exercising dominion and control over it, either by himself, his agents or tenants, and was liable to them therefor.

So far as the rights of the plaintiffs were concerned, the tenants of the boarding-house were the defendant's agents, and he is bound by their acts of negligence, from which damage has resulted to the plaintiffs. Code 275. It is contended in this case, that the plaintiffs undertook to keep the premises in repair, and therefore, it was their own fault that their goods were damaged by the water thrown upon them from the roof of the building. In my judgment, what is said in the record about repairs, only extended to the *ordinary repairs* of the roof, to prevent it from leaking ; the term " repairs," as it appears in the evidence, did not extend to the removal of the *fixtures* by the plaintiffs, which had been erected by the defendant over their store-room, which caused the damage, and was not, in my judgement, so understood by either of the parties ; the plaintiffs had no right as the tenants of the defendant, under the general license to make " necessary repairs " to have removed the *permanent*

*fixtures,* which the witnesses state caused the damage. Code 2255.

But it was contended, on the argument, that the cleaning out of the gutter and valley on the roof, and removing the trash therefrom, which had *negligently* been placed there by the defendant's tenants of the boarding-house, was such repairs as the plaintiffs were bound to attend to, and have done, and if they failed to do so, it was their own fault, and the defendant was not liable for the damage caused thereby. The Court below charged the jury on this branch of the case: "But the law does not require the landlord to sweep the premises and keep them clean while the tenant is occupying them; this is the tenants' business. If the house was properly built, and kept in repair, and if being kept clean, no damages would have resulted, *defendant is not liable.* If the kitchen overhead was built after plaintiffs first went into the house, and they renewed their tenancy without objection after it was built, the trouble of sweeping and keeping clean the premises is no matter of which the plaintiffs could afterward complain." In view of the facts of this case, this charge of the Court to the jury was error, and calculated to mislead them. The plaintiffs were only tenants of the *store-house* which they rented from the defendant; they were only bound to sweep and keep *that* clean; it was not their business or duty to sweep and keep clean the premises above them, which caused the damage to their goods, and which were in the occupancy of the defendant's tenants; they had no legal right to go *there* for that purpose. The defendant, as their landlord, was bound by his contract, to keep the store-house rented to the plaintiffs, fit for the use for which he rented it to them, and if, by obstructions placed there by himself, and used by his tenants, such obstructions and the use thereof by his tenants, rendered the store-house *unfit* for the purposes for which it was rented, and damage to the plaintiffs resulted therefrom, the defendant, as their landlord, is liable therefor, and the plaintiffs have the legal right to complain whenever damaged thereby, whether they renewed their tenancy under their original contract *after* the erection of the obstructions by the defendant,

as their landlord, or not. The contract was made *before* the obstructions were erected over their store-house by the defendant, their tenancy was renewed in pursuance of *that* contract. In my judgment, the plaintiffs would have been entitled to recover of the defendant for the damages sustained by the water thrown upon their goods in the store-room, as stated in the record, according to the general principles of law, for having erected and continued a *nuisance* upon the premises rented to them, independent of any special contract between the parties; much more are they entitled to recover under their contract, by which the defendant stipulated to have the store-room *well fitted up*, and ready for the use of the plaintiffs, and received from them the sum of eight hundred dollars *per annum* rent therefor. Let the judgment of the Court below be reversed.

McCay J., concurred, but furnished no opinion.

Brown, C. J., dissenting.

In my opinion the verdict and judgment in this case was right, and I cannot concur in the judgment of reversal.

The tenants elected to take the second lease for three years, with full knowledge that the kitchen and passway were over the store-room, just as they remained, till the damage was done. And if the tenant, who occupied the rooms over the store after the date of the second lease, negligently and wrongfully obstructed the gutter so as to prevent the free passage of the water from the roof, and there was no defect in the roof or gutter, but while it was perfect, it was filled up with trash by the negligence of the tenant above, he, and not the landlord, was liable for any damage that ensued by his negligence, or his wrongful act. In that case the obstruction placed in the gutter by the tenant above, was a nuisance, of which the tenant below had a right to complain, and if injured by it, he had a right to recover damages against the tenant above, for maintaining it to his injury.

The Code, section 2949, defines a nuisance to be, "anything that worketh hurt, inconvenience, or damage to another; and

Center & Treadwell *vs.* Davis.

the fact that the act done may otherwise be lawful does not keep it from being a nuisance."

If then the filling up of the gutter, which was perfect in itself, was caused by the negligence, or the wrongful act, of the tenant above, and was a nuisance, and it was not so filled when the tenant below took the second lease, the decision of this Court in the case of Vason vs. the City Council of Augusta, 38th Ga. R., 542, clearly fixes the liability on the tenant who maintained the nuisance, and not upon the landlord. In that case this Court says, "A landlord who has leased premises to a tenant is not liable for a nuisance maintained upon the premises by the tenant during the lease. If the nuisance existed upon the premises when the lease was made, the landlord is liable. But if the tenant continues the nuisance after he obtains exclusive possession and control, he alone is liable for its continuance. As the landlord under our statute is liable for necessary repairs on the premises, if the nuisance grows out of his neglect to make the repairs, the tenant may make them and set off the reasonable value against the rent due the landlord."

But it is objected that the case just cited was a criminal proceeding against Vason, the landlord. So it was. But what difference does that make ? What reason applies in favor of the exemption of the landlord in the one case, that does not in the other ? If he who maintains a nuisance is subject to indictment and punishment for so doing, and is also subject to an action for damages by a person injured by the nuisance, where is the reason for the distinction between the two cases ? With what propriety can it be contended that Davis was not liable to indictment for this nuisance, if it had resulted in general public injury, because he did not maintain it, and that his tenant was alone subject to punishment because he did maintain it, but that Davis was liable in damages to a particular individul injured by it ? Are we to lay down the rule of law, that the tenant is liable, criminally, because he alone maintains the nuisance, but that the landlord is liable civilly to an action for damages in case an individual is

injured by the nuisance, which is maintained by the wrong-ful act of the tenant alone?

It is said the contract and the statute of the State make the landlord liable for all necessary repairs. Grant it. But how does this avail the plaintiffs in error? What repairs were wanted? There is no evidence that either the roof or gutter was out of repair in the place where the injury occurred. They were perfect, and the damage resulted from the obstruction of the gutter by the wrongful act of the tenant above. If there had been no obstruction in the gutter, there would have been no damage.

But admit that the cleaning out of the gutter was understood by the parties, to be included in the necessary repairs of the roof and the verdict was still right. The evidence was in conflict; but there was positive testimony before the jury, that the plaintiffs in error called the attention of Davis, the landlord, to the condition of the roof, stating that it needed repairs, and that he told them to have the repairs made and charge to him, and they *agreed to do it.*

Now if the cleaning out of the gutter was part of the repairs, and the tenants agreed to have them made, at the expense of the landlord, and they neglected it, he is not liable to them for the damage resulting from their negligence. And as the jury, whose province it was to decide on the credibility and weight of the evidence, have found this issue for the landlord, and the Judge who tried the case is satisfied with the finding, we should not, in my opinion, disturb the verdict.

If this damage was the result of a nuisance, the tenant who maintained the nuisance, and not the landlord, was liable. But if it resulted from neglect to make the proper repairs, the plaintiffs in error, who had agreed to have them made, at the expense of the landlord, and had neglected to do so, have no right to recover from the landlord, damages which resulted from their own neglect. In either view of this question, I think the judgment of the Court below ought to be affirmed.