### HARRIS v. BOARDMAN et al.

(Supreme Court, Appellate Division, Fourth Department. January 7, 1902.)

LANDLORDS—DEFECTIVE PREMISES—LIABILITY TO TENANT—JURY QUESTION.

Where a tenant's goods were injured by leakage from a water-closet used exclusively by other tenants of his landlord, who lived over his store, the question as to whether the injury was caused by the landlord's negligence was for the jury.

Appeal from trial term, Cattaraugus county.

Action by Mollie Harris against Marcia P. R. Boardman and Marcia R. Bradner. From a judgment of nonsuit against plaintiff, she appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

C. S. Dwinells, for appellant.

Allen J. Hastings, for respondents.

ADAMS, P. J. The plaintiff, as lessee of the defendants, occupied a certain store, designated as No. 148 Union street, in the city of Olean, from the 1st day of July, 1897, until about the 1st day of April, 1899, under a written lease which bore date June 1, 1897. This store was part of a block or building two stories high, the second story of which consisted of tenement or apartment rooms, which were occupied by other tenants for dwelling purposes. In the center of the upper floor, and extending from front to rear, was a hallway, to which access was obtained by means of a stairway leading from the street between the plaintiff's store and another store on the north side of the building. The tenement rooms were sufficient in number to accommodate three or more tenants, and at the south end of the hallway was a water-closet, which was designed for the exclusive use of the tenants occupying the second floor. This closet was over the store occupied by the plaintiff, whose business was that of a dealer in gentlemen's clothing, shoes, and furnishings. About four weeks after the plaintiff entered into the occupancy of her store, water began to leak down from this closet, and continued so to do at intervals during the entire term of her tenancy. As a consequence a considerable portion of her stock of goods was injured by water and filth, and it is to recover such damage as she claims to have sustained by reason of the defendants' negligence in the care and management of this closet that this action is brought. At the close of the plaintiff's case a nonsuit was directed by the learned trial court upon the ground that there was an entire absence of negligence upon the part of the defendants, and the appeal from the judgment thereupon entered presents for our consideration the simple question of the correctness of this ruling.

In entering upon a brief discussion of the case as thus presented, it is hardly necessary to suggest that the .appellant, having suffered a nonsuit, is entitled to the most favorable inferences deducible from the evidence. Higgins v. Eagleton, 155 N. Y. 466, 50 N. E. 287. And with this rule in mind, it may be said to have been fairly established that the water-closet in question was under the supervision and control of the defendants; that the plaintiff was not entitled to use the same; that the pipes and other appurtenances therein were old, worn, and defective, and utterly unfit for the purpose for which they were designed; that by reason of this condition of things it repeatedly happened that the pipes burst and the closet bowl overflowed, in consequence of which the plaintiff's goods were damaged to the extent of nearly $200; that the defendants were fully aware of the defective condition of the closet and its appurtenances; that the attention of their agent was repeatedly called to the injury which resulted to the plaintiff by reason thereof; and that on several occasions when a leakage occurred some slight attempt would be made by him to repair the pipes and their connections, but that more than once he omitted to make any repairs, or to take any precaution whatever to prevent the overflow of water. With these facts established, the jury were certainly at liberty to find that the damage sustained by the plaintiff was attributable solely to the negligence of the defendants; and such being the case, it only remains to determine whether the plaintiff is without any remedy therefor. The case was obviously tried by the defendants and decided by the court upon the principle that, as between landlord and tenant, the former is not obliged to keep the demised premises in repair, in the absence of a covenant to that effect in the lease; but we think this principle cannot be invoked to defeat the plaintiff's claim, assuming the facts to be as they now appear. The gravamen of the plaintiff's complaint is negligence upon the part of the landlords, not as respects the condition or management of the demised premises, but as respects other portions of the premises, which the evidence shows were under their control, and which were above the store occupied by the plaintiff. Such a condition of affairs calls for the application of quite a different principle; for, irrespective of the rights of the tenant, dependent upon the landlord's covenant to repair, the conduct of the latter may be of such character as to create a right of action against him in favor of his tenant. To illustrate: The owner of a tenement house would have no legal right to lease a portion thereof, and then to maintain a nuisance in another portion, reserved to himself, which would cause annoyance and injury to his tenant. And the same principle applies to cases where the demised premises consist of portions of a building leased separately to different tenants; for in such cases, as is said by a text writer on the subject—

"The landlord retains control, and responsibility, to a greater or less extent, for the condition, of those parts of the building which are used in common by or for all the tenants, or those whom they invite there, such as the sidewalks, the halls and stairways, and the basement space devoted to coal bins, and also of certain classes of apparatus, such as the hot-water or steam pipes, dumb waiters, etc., employed to heat the apartments or supply

other conveniences. Thus he has a degree and kind of responsibility for the fit condition of these places and things in his control which he could not be charged with in the case of leasing outright an entire dwelling or other building. They are not part of the demised premises, and therefore the principle that the landlord is not bound to put or keep the demised premises in repair has no application." Chaplin, Landl. & T. § 488.

See, also, Tallman v. Murphy, 120 N. Y. 345, 24 N. E. 716.

In Dollard v. Roberts, 130 N. Y. 269, 29 N. E. 104, 14 L. R. A. 238, the defendant was the owner of a tenement house, a portion of which was leased to and occupied by the plaintiff, whose minor daughter was injured by the falling of some plaster from the ceiling of a hallway upon the ground floor, used in common by the tenants. The attention of the defendant's agent had been previously called to the dangerous condition of the ceiling, and the liability of the plaster to fall. It was held that in these circumstances the defendant owed to his tenants the duty of exercising reasonable care in keeping the hallway in suitable repair and condition for their use, and that it was for the jury to say whether the defendant was chargeable with negligence. In Peil v. Reinhart, 127 N. Y. 381, 27 N. E. 1077, 12 L. R. A. 843, it was likewise held that the landlord was liable for an injury resulting to one of his tenants in consequence of the defective condition of a carpet upon a stairway which was used in common by all the tenants, and which had become defective by the negligent omission of the landlord to repair the same. And in Stapenhorst v. Manufacturing Co., 15 Abb. Prac. (N. S.) 355, it was held that an action would lie by a tenant of a part of a building against the landlord, who occupied other parts, to recover damages for negligently allowing substances to leak through the ceiling into the tenant's rooms. It is true that the leakage complained of in the case last cited came from that portion of the building which was occupied by the landlord; but we do not see that this circumstance required the application of any different principle than is relevant to the facts of this case, by which it appears that the water-closet and its appurtenances were under the absolute control of the landlords. Like the defective ceiling and stairs in the hallway, they were designed for the common use and convenience of the tenants, or for such of them as were living upon the second floor; but it was nevertheless the defendants' duty to keep them in proper state of repair, or at least to see to it that they were not permitted to become a nuisance to their other tenants. We conclude, therefore, that the case was improperly disposed of at the trial court; that the defendants should have been put to their proofs; and that, because of the failure of the trial court to so hold, a new trial must be ordered.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event. All concur.