(87 App. Div. 150.)

## LEVINE v. BALDWIN.

(Supreme Court, Appellate Division, First Department.  October 23, 1903.)

1. LANDLORD AND TENANT—APPLIANCES—RETENTION OF CONTROL—DUTY TO
   REPAIR—NEGLIGENCE.

   Where a building was rented to various tenants, and a pipe was main-
   tained to carry off water from the roof, which ran through the cellar
   into the sewer, such pipe was a part of the appliances, the control of
   which was retained by the landlord, and not exclusively demised to the
   tenant of the cellar, and hence the landlord was liable for negligence in
   failing to keep the same in repair.

2. SAME—EVIDENCE.

   Where, after notice by a tenant to his landlord that water was leaking
   into the cellar, the landlord sent a plumber to ascertain the source of
   the leak, but by reason of the inefficiency of his inspection he failed to
   find the same, and shortly thereafter water again flowed into the cellar
   and damaged the tenant's goods, when it was discovered that such over-
   flow was caused by a hole in a lead water pipe used to carry off water
   from the roof, which ran through the cellar into the sewer, and that the
   hole might have been cut by rats, and did not appear to be of recent
   origin, the evidence was sufficient to justify a finding that the landlord
   was negligent in failing to previously ascertain and repair the defect.

3. SAME—LEASE—CONSTRUCTION.

   Where a lease provided that the tenant should, at his own cost, make
   all repairs to the interior of the premises and to the appurtenances thereof
   during the term that might be caused by the lessee or any of his em-
   ployés, or by necessity to preserve the property in good order and con-
   dition, etc., it only required the tenant to make such repairs as were
   necessitated by his acts or those of his employés, and did not require
   him to repair a defective water pipe used to convey water from the
   roof to the sewer.

   Van Brunt, P. J., dissenting.

Appeal from Trial Term, New York County.

Action by Joseph Levine against Eugenia G. Baldwin.  From a
judgment dismissing plaintiff's complaint, he appeals.  Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON,
O'BRIEN, and LAUGHLIN, JJ.

Joseph Fischer, for appellant.
Henry W. Simpson, for respondent.

PATTERSON, J.  Upon the trial of this cause, the complaint
was dismissed.  The action was brought to recover damages which
the plaintiff claims he sustained in consequence of merchandise be-
longing to him being injured by the alleged carelessness and neg-
ligence of the defendant.  The defendant was the owner of the
premises No. 22 Walker street, in the city of New York, and the
plaintiff was a tenant of part of such premises, namely, the store
and basement thereof, which he held under a written lease.  It is
alleged in the complaint that upon said premises were water pipes
used for the purpose of carrying off rain from the roof of the build-
ing into the sewer; that such pipes ran through various floors and
into the basement; that, owing to the negligence of the defendant
in permitting such pipes to become defective, rotten, and leaky, water

therefrom was discharged into the basement, where the plaintiff had merchandise stored; that the floor of the basement· was covered with water, and the plaintiff's goods, consisting of woolen fabrics, were damaged to an amount stated. The answer admits the ownership of the premises, and the occupation of the store and basement by the plaintiff as tenant, and also that the premises were fitted with water pipes running from the roof, and that they were used for the purpose of carrying off from the roof rain falling thereon. The other allegations of the complaint were put in issue.

It appeared in evidence that the leader by which was carried off the water from the roof was connected at about the level of the top of the basement floor at the rear of the building with a pipe which extended along the whole length of the wall of the basement obliquely, in a downward direction, until it entered the sewer connection at the front of the building. Part of this pipe placed against the wall was inclosed in a wooden casing. The plaintiff testified that in May, 1899, water entered the basement, but, it would seem, without doing any special damage to his merchandise. He also testified that the defendant was notified of the occurrence, and that she sent a plumber to the premises, who made some examination, but did not discover the cause of the water entering the basement. The defendant denies that any notification was given of the occurrence in May, 1899; but some weeks afterwards water again entered the basement, and the defendant was notified, and·a plumber was sent to the premises. That notification was given in writing on July 10, 1899. Responding to it, the defendant's agent sent a plumber to the premises. He made an examination, and came to the conclusion that the overflow of water into· the basement was caused by the sewer being overcharged in consequence of heavy rains and the backing up of the water into the premises. This plumber testified that he found no indication of an overflow from any other source. There was a closet in the basement, and this witness states that the water entered from the closet, because it was the lowest point. He took off all the casings of the pipe for about eight feet. He did not take off the casings under the closet. He says he could not get at them. Subsequently to this another overflow of water into the basement occurred. The defendant was again notified, and her agent sent another plumber to investigate, and ascertain, if possible, its cause. It was this last overflow that injured the plaintiff's goods. The second plumber examined the water-closet. He found the bowl of it perfectly dry, and the basin dry, but the floor wet. He came to the conclusion that the overflow came from underneath the floor, and he so reported to the agent of the defendant, who gave orders to remove the floor, and, if anything were found defective, to repair it. When the floor was taken up, the defect was found. Between the vault of the building and the water-closet was a disused trap, sealed up by a piece of sheet lead. There was a hole in it three or four inches wide, and the witness testified that he knew what caused the hole. "The trap was not corroded. It was a lead pipe—a trap. The hole had been cut by rats." To get at this disused trap, this plumber took down the casing and took up the floor, and, when the

trap was exposed, the cause of the overflow was made apparent. This witness testified that he could not tell how recently the hole had been made—if it were a new thing, he could tell. "Rats might have cut that hole, two, three, four, five, six months ago." As the case then stood, the jury might have found, upon the proof, that the defect in the pipe, to which the overflow of water in the basement might be attributed, was something that had existed for some months; that it might have been discovered by proper and sufficient examination; and that the defendant, after notification that water flowed into the basement, had failed to make or cause to be made such proper and sufficient examination; and, if they so found, the defendant would have been chargeable with negligence, and liable for the damages sustained by the plaintiff.

This draining apparatus or appliance was not part of the demised premises in the occupation of the plaintiff. It was something used for the benefit of the whole building. It drained the water from the roof, and the defect in the pipe at the trap, according to the testimony of the plaintiff, was at an elbow where two pieces of pipe came together and formed a corner, and one of those pieces making this elbow was that which ran along the inside wall from the end of the building; and thus the point at which the defect was discovered was in the pipe with which the leader from the roof was connected, if the testimony of the plaintiff, who was present when the defect was discovered, is to be believed. The rule of liability to be applied here is that which obtains in cases in which a landlord is responsible for injuries sustained by tenants through negligence in or upon those parts or appurtenances of demised premises which remain under the charge and control of the landlord. That liability arises after notice, and such notice was given in ample time to have the defect repaired before the last overflow, which caused the injury to the plaintiff's goods, happened. Tallman v. Murphy, 120 N. Y. 345, 24 N. E. 716; Fitch v. Armour (Super. N. Y.) 14 N. Y. Supp. 319; West Side Savings Bank v. Newton, 57 How. Prac. 152; Dollard v. Roberts, 130 N. Y. 269, 29 N. E. 104, 14 L. R. A. 238. In Leonard v. Gunther, 47 App. Div. 194, 62 N. Y. Supp. 99, it is said that the duty of the landlord extends to keeping in proper repair all portions of a building, including fixtures, not exclusively demised to a tenant, and the landlord is liable for any damage suffered by any tenant, resulting from a failure of such duty. It is said in Chaplin on Landlord & Tenant, $488, and referred to with approval in Harris v. Boardman, 68 App. Div. 437, 73 N. Y. Supp. 963, that:

"The landlord retains control, and responsibility, to a greater or less extent, for the condition, of those parts of the building which are used in common by or for all the tenants, or those whom they invite there, such as the sidewalks, the halls and stairways, and the basement space devoted to coal bins, and also of certain classes of apparatus, such as the hot-water or steam pipes, dumb waiters, etc., employed to heat the apartments or supply other conveniences. Thus he has a degree and kind of responsibility for the fit condition of these places and things in his control, which he could not be charged with in the case of leasing outright an entire dwelling or other building. They are not part of the demised premises, and therefore the principle that the landlord is not bound to put or keep the demised premises in repair has no application."

Here the duty rested upon the landlord to make repairs after notification. Further than that, the defendant undertook to make repairs, and, having so undertaken, she was bound to make them with diligence and care. She could do it by making a contract with others to do it. The jury might have found that the first plumber did not exercise diligence and care, for, if he had, he would have discovered the condition which was disclosed to the second plumber when a thorough examination was made, and the cause of the overflow was detected. Blumenthal v. Prescott, 70 App. Div. 565, 75 N. Y. Supp. 710; Brennan v. Ellis, 70 Hun, 472, 24 N. Y. Supp. 426.

It is suggested that the defendant is not liable because of a covenant contained in the lease of the store and basement, and which reads that the plaintiff "at his own cost and expense will make all repairs to the interior of the premises and the appurtenances thereof, during the said term, that may be caused by the party of the second part, or any of his employees, that may be necessary to preserve them in good order and condition, except any repairs that may be necessary in consequence of damage by fire or the leakage of the roof, and that such repairs shall be equal in quality and workmanship to the original work in said building." This stipulation of the lease only refers to repairs necessitated by the acts of the tenant or of his employés.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur, except VAN BRUNT, P. J., who dissents.