Argued July 10, affirmed September 8, rehearing denied September 29, 1925.

## THOMAS LONGBOTHAM *v.* D. TAKEOKA ET AL.

(239 Pac. 105.)

**Evidence—Testimony of Piano Dealer as to Value of Pianos to Him, Which He Regarded as Synonymous With Market Value, Proper.**

1. In tenant's action for damages to pianos by water due to defective drain, refusal to strike testimony of experienced piano trader as to what pianos were worth to him *held* not error, where he testified that such value was his idea of market value also.

**Trial—Deposition as to Time in Which Damaged Property Was Examined Properly Admitted—Time Affecting Weight not Competency of Testimony.**

2. In tenant's action for damages to pianos by water due to defective drain, refusal to strike deposition of witness, that pianos damaged in September were examined by him in October, as remote, was not error, since objection went to weight, not competency, of deposition.

**Landlord and Tenant—Landlord Liable for Injury to Tenant's Property Through Negligent Management of Part of Building not Included in Lease, Though No Covenant to Repair.**

3. Landlord is liable for injuries to tenant's goods caused by negligent management of part of building not included in lease, such as drain to take waters collected on roof, though there was no cove-

---

3. See 16 R. C. L. 1043.

nant to repair; rule that without covenant landlord is not bound to repair not being applicable.

**Damages—Measure of Damages for Injury to Personal Property is Difference in Value Before and After Injury.**

4. The measure of damages for injury to personal property is the difference between its value at the place immediately before and immediately after the injury.

**Appeal and Error—Questions not Embodied in Assignments of Error not Considered.**

5. Questions not embodied in assignments of error will not be considered.

**Appeal and Error—Assignments not Briefed Presumed Waived.**

6. Assignments of error not argued in brief will be presumed waived.

(1) 22 C. J. 702.  (2) 22 C. J. 165; 38 Cyc. 1404 (Anno.).  (3) 36 C. J. 234.  (4) 17 C. J. 877.  (5) 3 C. J. 1330.  (6) 3 C. J. 1410; 4 C. J. 1068.

From Multnomah: ROBERT TUCKER, Judge.

Department 1.

AFFIRMED.    REHEARING DENIED.

For appellants there was a brief over the names of *Mr. W. H. Fowler* and *Mr. H. H. Riddell,* with an oral argument by *Mr. Riddell.*

For respondent there was a brief over the names of *Mr. Johnston Wilson* and *Mr. Elton Watkins,* with an oral argument by *Mr. Wilson.*

BURNETT, J.—This action was originally commenced by the plaintiff against S. Kajikawa and T. Sumida as defendants. The first-named defendant died *pendente lite* and D. Takeoka as his administrator was made defendant in his stead.

The defendants are the owners in fee of a three-story brick building covering a half block in the City of Portland. The rooms on the first floor are used as stores. Those above are used and occupied by the defendants as a hotel. The plaintiff was a tenant of one of the storerooms from month to

month paying rent to the defendants. For the purpose of giving light and ventilation to the interior rooms of the hotel on the second and third floors of the building an open light-well ten feet wide by sixty feet long had been constructed extending from the first story upwards so that under the light-well the building was in effect only one story high. In the light-well was a skylight over the back part of the store occupied by the plaintiff. In other words, the plaintiff's storeroom was partly covered by the floor of the light-well and lighted in part in the rear by the skylight.

The plaintiff was a dealer in player pianos together with paper music rolls used in that class of instruments, and had a number of them stored in the back part of his store under the light-well and skylight. He charges in substance that the building is so constructed that the entire roof is drained into the light-well and thence by a drain-pipe running down through the ceiling of the room he had rented and occupied as a store and into the basement, under the store, where it was connected with and discharged into the city sewer. In this drain-pipe and situated just below the ceiling of his store was a closed trap which he says was permitted by the negligence of the defendants to become clogged up during the summer of 1921 so that the pipe would not carry off the water that fell on the roof of the whole building and ran into the light-well. He disclaims control of any of the building outside of his store and imputes to the defendants the authority and control over all the remainder of the building including the roof. He avers substantially that about September 17 and 18, 1921, during a rainstorm happening Saturday night and the following Sunday, the water falling on the entire roof of the whole building flowed into the

light-well and, owing to the stoppage of the drain-pipe there, backed up and accumulated in such quantity that it forced its way through the roof and around the skylight and deluged his pianos and music rolls to his damage in the sum of $3,338.50. A further claim of $300 for loss of prestige to and hindrance of his business was disregarded and taken from the jury by the court at the trial and requires no further notice.

The answer of the defendants traverses all the averments of the complaint in any way imputing liability to them. They allege that the plaintiff was in occupancy of the storeroom when they purchased the building and that he knew and they did not know the condition of the drainage system involved and the probability of damage resulting therefrom. They impute to the plaintiff contributory negligence in that, with knowledge of the defective drainage system and of its having given him trouble on previous occasions, he failed to repair the same or to protect his goods or to inform the defendants of the defect. The reply traversed the new matter in the answer.

1. The result of a jury trial was a verdict and judgment for the plaintiffs and the defendants have appealed. It is assigned as error that the court refused to strike out the testimony of the witness Irwin regarding the value of the pianos because he testified what they would be worth to him. It is of course material on the question of damages to ascertain the reasonable market value of the injured property immediately after the happening of the accident. Irwin was a sales manager in the music department of a large mercantile establishment and had been engaged for several years in appraising and selling pianos. On cross-examination the witness testified as follows in response to the questions here set down:

"Q. Could you estimate the amount of depreciation, not what you would give for it—what it was worth in the open market? A. That is the only way I think it is fair for me to answer, what I would give for it, Mr. Fowler; another dealer might give more than I would. Q. I presumed you were testifying to the reasonable value. A. I am giving my opinion and my opinion is all. The Court: In this testimony, is it an opinion as to the reasonable market value, that is, estimating these damages, or is it what you yourself individually as a dealer would give for them? A. What I, myself, as a dealer, would give for them. I certainly try to keep in touch with the market. The Court: What is that, is that your idea of the market value as well as your own? A. That is my idea of what the market value would be as well as my own."

As one connected with the piano trade as he was, the witness manifestly regarded the market value of the instruments and what he would give for them as synonymous and so explained himself in answer to the questions asked by the trial judge. There was no error in refusing to strike out his testimony on the ground suggested.

2. Another fault ascribed to the trial court was its refusal to strike out the deposition of the witness Foley and his answers to interrogatories propounded to him about the condition of the pianos after the rainstorm. It was charged in the complaint that the instruments were damaged September 17 and 18, 1921, and Foley said he saw them in October of that year. The defendants as ground for striking out his testimony urged that his view of the pianos was too remote and that it did not appear that they were then "in the same condition they were in immediately after the alleged injury was consummated." There was no error in the ruling of the court on this ques-

tion.   The objection went rather to the weight than to the competency of the deposition.   Besides that, there is testimony in the record from which the jury might well believe that Foley inspected the property on Monday, the day following the rain and that he was mistaken or wrongly reported in the statement that he saw the pianos in October.

3. According to the argument appearing in the brief of the defendants and as stated at the hearing, their principal contention is that this is a case within the well-known rule that in the absence of an express covenant by the landlord to make necessary repairs, the tenant is the one to keep up the leased premises. The reason for the precept is that the tenant takes the estate as he finds it, with its advantages and its drawbacks and if he would protect himself against the expense of betterments, he must either not acquire the tenancy or exact from the landlord a covenant to make the repairs necessary to the enjoyment of the estate.

But the application of the rule cannot be extended beyond the estate demised.   The tenant cannot be held to repair that over which he has no authority. Responsibility whether of the landlord or of the tenant follows and is measured by the control lodged in one or the other.   Merely because A is landlord and B is tenant does not excuse A from liability for damage he inflicts upon B by operation of an appliance in the control of the former.

*Tennant* v. *Hall*, 27 N. B. 499, cited by the defendants, was a case where the roof to be drained covered the plaintiff's room as well as those above occupied by his landlord.   The jury found that there was no negligence imputable to the latter.   In an unusually heavy rainstorm the water backed up, overflowed the gutter-box and flooded the plaintiff's store.   It was

held that as the water was not collected on the roof and conveyed into the drain for the benefit of the defendant alone, but also for the benefit of the plaintiff, and there being no negligence of the defendant shown, the latter was not liable for the injury to the plaintiff's goods. Mr. Chief Justice ALLEN stated the issue thus:

"The right of the plaintiff to recover in this case does not depend on any obligation on the defendant arising from the relation of landlord and tenant which in fact existed between the parties; but upon the question, whether the defendant was guilty of any negligence in the construction of the roof of his building, or in the means provided by him for carrying the rainwater off the roof."

In the same case BRETT, L. J., put it thus:

".Then, as to the absence of negligence in the construction and maintenance of the cistern and pipes there was evidence on which the jury might indeed have found one way or the other, but they have found in favor of the defendant."

In the instant case, the matter is not one of contract, or of breach of the landlord's covenant. It is one of tort which the plaintiff charges upon the defendant in that the latter in draining his own roof negligently let his appliances which he employed for that purpose get out of order and clogged up, so that the water was cast upon the plaintiff tenant's premises to the damage of his goods. In the aspect presented by the complaint, the situation is identical with one in which the parties are adjoining owners of fee-simple estates and one negligently causes water to flood the premises of the other. In other words, the defendant's character as landlord does not exempt him from the consequences of his own negligence although the injured party happens to be his tenant. The rule

thus stated is supported by the following precedents: *Capwell Co.* v. *Blake,* 9 Cal. App. 101 (98 Pac. 51); *Siggins* v. *McGill,* 72 N. J. Law, 263 (62 Atl. 411, 111 Am. St. Rep. 666, 3 L. R. A. (N. S.) 316); *Levine* v. *Baldwin,* 87 App. Div. 150 (84 N. Y. Supp. 92); *Dreeves* v. *Schoenberg,* 82 N. J. Law, 335 (82 Atl. 530); *Rubenstein* v. *Hudson,* 86 N. Y. Supp. 750; *Lorensen* v. *Klebanski,* 193 N. Y. Supp. 224; *Toole* v. *Beckett,* 67 Me. 544 (24 Am. Rep. 54); *Dollard* v. *Roberts,* 130 N. Y. 269 (29 N. E. 104, 14 L. R. A. 238); *Priest* v. *Nichols,* 116 Mass. 401; *Center* v. *Davis,* 39 Ga. 210; *Pike* v. *Brittan,* 71 Cal. 159 (11 Pac. 890, 60 Am. Rep. 527); *Friedenberg* v. *Jones,* 63 Ga. 612; *Smith* v. *Faxon,* 156 Mass. 589 (31 N. E. 687); *Kneeland* v. *Beare,* 11 N. D. 233 (91 N. W. 56); *Perry* v. *Levy,* 87 N. J. Law, 670 (94 Atl. 569); *Farley* v. *Byers,* 106 Minn. 260 (118 N. W. 1023, 30 Am. St. Rep. 613); *Glickauf* v. *Maurer,* 75 Ill. 289 (20 Am. Rep. 238). In the last case here cited, the court said:

"It is true the second story of the building was in the possession of the appellants and appellee could not direct or control its use, and appellants had the right to use it as they saw proper; but they had no right to use it in such a manner as to injure appellee; and if, through negligence, the want of reasonable care or skill on the part of appellants or their servants, appellee has been injured, they must respond in damages."

See, also, 1 Tiffany, Landlord and Tenant, p. 622, § 88; 3 Sutherland on Damages (3 ed.), § 872.

Almost without exception the cases cited by the defendants are based on the rule that, unless he covenants so to do, the landlord is not bound to repair; but this precept is not applicable where his negligent management of his property not included in the lease

damages the goods of the tenant. Other precedents cited by the defendants relate to instances where the entire building in which the tenant has a room is destroyed by fire. All of them treat of fires happening without fault of the landlord. *Doupe* v. *Genin,* 45 N. Y. 119 (6 Am. Rep. 47), and *Gavan* v. *Norcross,* 117 Ga. 356 (43 N. E. 771), found in the defendants' brief, are of that sort, and teach us that such a destruction of the building destroys the estate of the tenant and terminates the lease in which event the landlord cannot be compelled to restore the building and provide for the renewal of the lease unless he has agreed to do so. The same doctrine is laid down in *Harrington* v. *Watson,* 11 Or. 143 (3 Pac. 173, 50 Am. Rep. 465), and *Hahn* v. *Baker Lodge,* 21 Or. 30 (27 Pac. 166, 33 Cent. L. J. 294, 13 L. R. A. 158, and note). All the cases noted by the defendants involve the contractual relations of the landlord and tenant and have nothing to do with the torts of either of them. In this connection it is believed that a landlord cannot willfully or negligently burn out or drown out his tenant without being responsible in damages.

4. As to the measure of damages, the contention of the defendants as expressed in their brief is that

"When the personal property is not entirely destroyed, but is susceptible of being repaired, the measure of damage for an injury is the reasonable cost of making the repairs."

In *Hansen* v. *Oregon-Wash. R. & N. Co.,* 97 Or. 190, 201 (188 Pac. 963), Mr. Justice HARRIS said:

"Stated broadly, the measure of damages for an injury to personal property is generally the difference between its value at the place immediately before and immediately after the injury."

The rule is sustained by the text and a long list of cases in the note in 17 C. J. 877. By analogy Mr. Justice BEAN recognized the principle in *Lee Tung* v. *Burkhart,* 59 Or. 194, 205 (116 Pac. 1066), where he said:

"In actions in the nature of trover, the general rule of damages is the value of the property at the time of the conversion, diminished, when the property has been returned to and received by the owner, by the value of the property at the time it was returned."

Depreciation in value of personalty is a plain and simple standard easily applied and its use avoids multiplication of issues, not only as to what the injury actually was, but also what would be the reasonable cost of repairs.

5, 6. Finally, something is said in argument about the requisites of a hypothetical question, but it would be academic to discuss that matter here for it is not embodied in any assignment of error. Some assignments of error are not treated in this opinion, because no argument about them is presented in the brief and it is presumed they are waived.

The judgment of the Circuit Court is affirmed.

AFFIRMED. REHEARING DENIED.

McBRIDE, C. J., and RAND and COSHOW, JJ., concur.