[L. A. No. 18832.   In Bank.   Apr. 12, 1944.]

COLUMBIA LABORATORIES, INCORPORATED (a Corporation), Respondent, v. CALIFORNIA BEAUTY SUPPLY COMPANY et al., Appellants.

George Penney and Jean Wunderlich for Appellants.

I. Charles Rubin and Joe Wapner for Respondent.

CURTIS, J.—The plaintiff brought this action to recover damages which it claims to have sustained in consequence of its merchandise being injured by the defendants' negligence. The damage for which compensation is sought allegedly occurred on January 24, 1941, during a heavy rainstorm, and was caused by rain water seeping through the walls and ceiling of certain premises occupied by the plaintiff as a tenant in a building owned by the defendants. The action is based upon the alleged negligence of the defendants in caring for the roof of their building following certain fire damage to a portion thereof. The case was tried by the court sitting without a jury, the plaintiff prevailed therein, and its damages were assessed at the sum of $1,750. From a judgment entered accordingly in favor of the plaintiff, the defendants prosecute this appeal.

The building in question is a four-story loft structure, the back part of which is divided from the front part by a brick fire wall. As of January 1, 1941, the plaintiff was renting on a month to month basis one of two adjoining lofts, separated by a thin stucco partition, on the second floor of the front portion of said building, and it continued to remain as such tenant for several months thereafter. This loft constituted the plaintiff's place of business for the manufacture of numerous pharmaceuticals used in its beauty supply trade, and various chemicals, cellophane labels, bottles and other essential equipment were kept on the premises. On January 4, 1941, a fire started in the hallway on the second floor, spread upstairs through the freight elevator passageway to the fourth or top floor, which the defendants had retained for their own use, and consumed a large area of the roof over the rear portion of the building. Except for some smoke

damage, the plaintiff's loft in the front portion of the building was unharmed by the fire. On January 6, 1941, temporary roof bracings were installed, and on the following day a waterproof canvas covering was nailed in place. The likelihood that the damage to the freight elevator would prevent its operation for several weeks prompted the plaintiff, shortly after the fire and pursuant to an arrangement with the defendants, to move from its loft on the second story to certain allotted space on the ground floor some of its bulky merchandise—goods which could not be handled in the trade without proper elevator facilities. On January 24, 1941, as the result of heavy rains beating on the defendants' building in its partially destroyed condition and with its temporary roof covering, a large quantity of water leaked through the walls and ceiling of the respective premises occupied by the plaintiff and caused considerable injury to its stock of goods stored on the ground floor and in its second-story loft. The defendants declined to make any reparation for the damage sustained by the plaintiff.

The defendants from the commencement of this suit have contended, and now contend, that in no event would the series of happenings above recited give rise to a cause of action in favor of the plaintiff. In this connection the defendants rely on the following undisputed facts: Plaintiff was their tenant on a month to month rental basis; there was no written lease and no contract imposing on the defendants the duty to restore or repair the demised premises or any part of the remainder of the building; and there was no agreement for the restoration or repair of any part of the building that might be destroyed or damaged by fire. But in this case the matter is not one of contract or of breach of a landlord's covenant; nor does it contemplate any theory of statutory liability. Rather the plaintiff's claim rests wholly upon the tort concept of the duty imposed upon a landlord to use reasonable care in keeping in suitable condition such portions of the premises as are subject to his control. Thus the basic principle of law is stated in 15 Cal.Jur. 706, section 116: "The rule that there is no implied obligation upon the landlord, in the absence of statute, to keep the demised premises in repair or fit for occupation, applies only to the premises actually leased, and does not operate to free the landlord from liability to the tenant for injuries arising from de-

fects in other portions of the premises of which the lessor retains possession and control." (*H. C. Capwell Co.* v. *Blake,* 9 Cal.App. 101 [98 P. 51]; *Rathbun Co.* v. *Simmons,* 90 Cal.App. 692 [266 P. 369]; *Inglis* v. *Garland,* 19 Cal.App. 2d Supp. 767 [64 P.2d 501].) In other words, the defendants' character'as landlord does not exempt them from the consequences of their own negligence, although the injured party happens to be their tenant. (*Longbotham* v. *Takeoka,* 115 Ore. 608 [239 P. 105, 43 A.L.R. 1285]; see annotation, 43 A.L.R. 1292, et seq.) ██ Here the plaintiff had no care or control of the roof of the building in question and had no right to intermeddle with it. Rather the defendants had such care and control for the benefit of all the occupants of their building, and they, in fact, exercised their right of exclusive possession of the roof incident to their undertaking to make the necessary repairs. Consistent with the scope of the fundamental legal concept above indicated as determinative of the propriety of the plaintiff's theory of recovery, the defendants' reference to the distinguishable cause of the defective condition in the roof—a fire without fault on their part—would not affect the question of their liability for any *subsequent* failure to exercise common care and prudence in the management and oversight of that portion of the building which belonged to their especial supervision and care. From this aspect of tort law they must respond in damages for any negligence in the discharge of their obligation. (See 1 Tiffany, Landlord and Tenant, 622, § 88; Sutherland, Damages, 4th ed., vol. 3, § 872.)

██ With this point of law decided against the defendants, there remains for consideration their argument as to the insufficiency of the evidence to support the trial court's decision of the issues of fact in this case. The judgment in favor of the plaintiff rests upon the following finding: "That it is true that on or about the 4th day of January, 1941, defendants, and each of them, did suffer damages to said building due to a fire on a portion of said building occupied other than by the plaintiff herein, and that the said defendants, and each of them, thereafter failed and neglected to repair said damage to said building, and as a direct and proximate result of such negligence and failure upon the part of the defendants, and each of them, to make the necessary repairs to the damaged portion of said building, that on or about

the 24th day of January, 1941, waters due to rain did seep through the walls and ceiling of said premises occupied by the plaintiff herein, causing damage to the plaintiff's merchandise not in the amount of Two Thousand Nine Hundred Thirty Four and 29/100ths ($2,934.29) Dollars, but did sustain damages in the amount of One Thousand Seven Hundred Fifty ($1,750.00) Dollars." The state of the record herein does not permit disaffirmance of the disposition made of this case at the conclusion of the trial, as will readily appear from the following discussion of the evidence.

Turning to the testimony, witnesses on behalf of the plaintiff attested to the following facts: That as the result of the fire on January 4, 1941, the roof on a portion of the defendants' building adjacent to the part occupied by the plaintiff was partially destroyed, but there was no damage, other than smoke, to the plaintiff's loft; that the waterproof tarpaulin installed as a temporary covering on January 7, 1941, did not at all times extend over a large part of the burned section of the roof and from the hallway on the second floor, one on occasion could see light through to the skyline; that the tarpaulin as used was not securely nailed in place and rain would cause it to collapse, a condition unavailingly called to the defendants' attention; that following the fire damage to the freight elevator in the building, the plaintiff moved part of its bulky merchandise to certain allotted space on the ground floor; that until the severe storm on January 24, 1941, no water damage was sustained by the plaintiff, but on that date the heavy downpour, beating on the damaged roof of the defendants' building with its temporary canvas covering, caused a steady stream of water to come through the walls and ceiling of the plaintiff's loft and forced even weighted merchandise on the shelves to topple to the floor; that six or eight people were required to shovel out the water which flooded the plaintiff's second-story loft; that at the same time the rain water entered the ground floor space occupied by the plaintiff, stood there two feet deep and soaked through various cartons of merchandise stored there; that a few days after the storm the defendants agreed to make some arrangement to take care of the plaintiff's damage, but that this promise never materialized; and that the permanent repair of the roof was not completed until March, 1941, though started some four or five weeks earlier. The record also includes as ex-

hibits introduced by the plaintiff certain photographs showing the flooded condition of the premises occupied by the plaintiff—both the ground floor space and the second-story loft—following the heavy rain of January 24, 1941. Contra to the plaintiff's evidence is testimony adduced on behalf of the defendants as to these material points: That the waterproof tarpaulin was securely fastened on the roof and extended at all times over the entire burned portion thereof; that such method of installing a temporary protective covering against the weather was practical and customarily followed; that the construction of a permanent roof began on January 27, 1941, and various portions of the repair work were finished during the ensuing month; and that the claimed damage to the plaintiff's merchandise was not attributable entirely to the rain leakage through the roof as the result of the storm on January 24, 1941, but was due in part to water seepage through the walls following the fighting of the fire twenty days earlier. The conflict thus appearing in the record was for the trial court to resolve, and its decision will not be disturbed on appeal. (2 Cal.Jur. 921, § 543, and cases there cited.) Choosing to accredit the plaintiff's evidence, the trial court was warranted in concluding therefrom that the defendants did not exercise common prudence in their supervision of that part of the building under their exclusive control and that their negligence, both in the installation of an inadequate temporary roof covering and in the delay following the fire before the commencement of permanent repairs, was the proximate cause of the water damage to the plaintiff's stock of goods on the day of the storm. Such determination does not infer that the defendants were in the position of insurers of the plaintiff, for no such question arises under the facts of this case. Rather it simply serves to affirm the general doctrine that the defendants were chargeable merely with the exercise of ordinary care. ■ Negligence in its last analysis imports a lack of care, and both negligence and care are relative to duty. ■ Whether or not the defendants discharged their obligation to keep the roof of their building in such repair that its condition would not be a source of injury to their tenants was purely a question of fact. Suffice it to say that the record sustains the trial court's determination of the point against the defendants.

■ Though the defendants did not plead the affirmative defense of contributory negligence, they seek to avail themselves here of that plea upon the theory that the plaintiff's own evidence establishes its failure to exercise that degree of care which was incumbent upon it to protect its property from damage in consequence of the defective condition of the building in question. (19 Cal.Jur. 681, § 104; *Hoy* v. *Tornich*, 199 Cal. 545 [250 P. 565].) The circumstances of this case do not support the defendants' charge in bar of the plaintiff's recovery. Indisputably, the plaintiff, a tenant on the second floor, had no authority to make repairs to the fire-damaged roof, the control of which the defendants retained for the general benefit of the occupants of their building. But the defendants argue that the plaintiff, while complaining here of certain inadequacies of the temporary roof installation provided by the defendants, and in particular the tendency of the canvas covering to collapse, nevertheless continued to maintain its place of business on the premises and to keep its stock of goods there. However, it also appears in the record that from the date of the fire the defendants, consistent with their assumption of complete responsibility for the making of the necessary repairs on the partially destroyed roof, had assured the plaintiff that they would take care of any deficiencies in the temporary covering—though apparently they did not—and would proceed with the permanent construction work as expeditiously as possible. Furthermore, until the occurrence of the storm twenty days after the fire, the plaintiff had sustained no water damage to its merchandise as the result of the impaired condition of the roof and was unaware that its property was endangered while kept on adjacent premises. Under these various considerations it would be an extremely harsh view to hold that the plaintiff, while continuing to occupy the defendants' building in reliance upon the latter's promise to look after the repair of the premises under their supervision and management, as they were required to do, would nevertheless be barred from the recovery of damages resulting from the defendants' failure to perform their duty. The defendants may not thus escape liability for their negligence. (*H. C. Capwell Co.* v. *Blake, supra; Rathbun Co.* v. *Simmons, supra.*)

■ The defendants finally urge that the damages awarded were excessive, but this contention is not substantiated by the record. As shown by the above-quoted finding of

the trial court, the amount of damages found in favor of the plaintiff was considerably less than that sought upon the basis of an itemized list of the monetary loss sustained. It appears from the plaintiff's evidence that its stock of goods, both on the ground floor and in the second-story loft of the defendants' building, was completely ruined as the result of the water leakage incident to the storm of January 24, 1941; that such loss was attributable solely to the impaired condition of the roof at the time in question; and that the worth of the merchandise so damaged was identified at the trial with exact reference to the above-mentioned itemized listing. The defendants did not offer any proof upon this subject. In such circumstances the facts adduced at the trial warranted the award made.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.