SALVATORE CIARMATARO, administrator, *vs.* KARL ADAMS.

Suffolk.   January 15, 28, 1921. — June 1, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Agency*, Scope of authority or employment. *Wilful, Wanton or Reckless Misconduct.*

It cannot properly be inferred that a caretaker, having general charge for the owner of an island on which was a house occupied by the caretaker, had authority to set a spring gun so that it would be discharged and shoot one attempting to enter the house through a window; and, if a trespasser is shot by a gun so arranged by the caretaker and dies from his wounds, an action of tort cannot be maintained against the owner for the trespasser's conscious suffering and death thus caused by the reckless or wanton act of the caretaker.

TORT.   Writ dated July 19, 1924.

In the Superior Court, the action was tried before *D. T. O'Connell*, J.   Material evidence is described in the opinion. The defendant rested at the close of the evidence for the plaintiff and moved that a verdict be ordered in his favor. The motion was denied.   There was a verdict for the plaintiff in the sum of $9,000 on a count for the conscious suffering and $9,000 on a count for the causing of the death, of which the plaintiff, under order of court as to the count for conscious suffering, remitted all in excess of $3,000, leaving the entire verdict $12,000.   The defendant alleged exceptions.

*W. H. Hitchcock*, (*T. Kelly* with him,) for the defendant.
*J. P. Walsh* (*A. Adelson* with him,) for the plaintiff.

CROSBY, J.   This is an action to recover for the conscious suffering and death of the plaintiff's intestate as a result of personal injuries received on June 13, 1923, on the island of Middle Brewster, in Boston harbor.   The declaration contains two counts, the first for conscious suffering and the second for death, and both allege that the intestate was shot "owing to the wilful, wanton or reckless act of the defendant or the wilful, wanton or reckless act of

his agents or servants while engaged in his business."
There is no contention that there was evidence of any such
act on the part of the defendant personally.

The undisputed testimony showed that the intestate, a
boy sixteen years of age, was killed by a shot from a con-
cealed spring or trap gun set up inside the window of a
small building, which will hereafter be referred to as the
"cottage," in such a manner that it would be discharged
if the window were raised or attempted to be raised by
any one. It is the contention of the plaintiff that this gun
was placed behind the window by one Roose, a servant of
the defendant, acting within the scope of his employment.

It is not disputed that the defendant's father bought the
island about the year 1891 and lived there until 1914 or 1915;
that he died intestate in 1920, and at that time he owned
eleven twelfths of the island; that the defendant and his
mother were his only heirs. On the part of the island
owned by the defendant there was a large frame house on
the top of a hill, and there was also the cottage where the
shooting occurred, and a boat house. There was evidence
that in 1922 and 1923 the defendant with his mother's
consent had the right of control of the property. She died
in 1925. Roose was a lobster fisherman; he had occupied
the cottage for some years before the shooting occurred,
and previously had been in the defendant's employ. The
defendant, who was called by the plaintiff, testified that
in 1922 he owned a boat and Roose had charge of it; that
Roose was subject to his orders respecting the boat and
what he should do on the island. The house on the hill had
not been occupied since 1914 or 1915; it was in a dilapidated
condition, and contained no furniture. About 1921 the
defendant made an arrangement with Roose by which,
when the latter was not engaged in fishing in the winter,
he was to make some repairs on the house, and the defend-
ant permitted him to live in the cottage. The next year the
defendant had other men repairing the property, and Roose
was hired to take these men to and from the island when
required. The defendant never lived there after his father's
death. He testified that there was no personal property

on the island belonging to him or to his father's estate at the time of the shooting. There was no evidence tending to show that there was personal property on the island when the plaintiff's intestate was shot, except carpenter's tools, furniture and some other articles in the small cottage occupied by Roose. It did not appear that any of them were the property of the defendant. It is not argued by the defendant that the boy in attempting to raise the window was acting for any purpose other than to deliver a message to Roose and to obtain a drink of water.

The defendant further testified that Roose had the right to permit people to land on the island; that he had no right to warn people off; that he, the defendant, placed no limitations upon persons landing there, and never told any one that Roose was his caretaker; that Roose was not to take care of the property for himself or for his mother. The plaintiff introduced testimony by other persons that Roose had been seen repairing the house and working on boats in 1922 or 1923; that he had warned people off who attempted to land on the island; that on one occasion about a year before the shooting he had been seen to do so when the defendant was there; that Roose had a workshop on the island and tools for repairing boats and motors.

The evidence tended to show that the plaintiff and his sons, Vittorio, the deceased, and Joseph, were shell fishermen and were accustomed to gather periwinkles on the island and on other neighboring islands; that the plaintiff with the knowledge of Roose had at times kept a small boat on Middle Brewster for use in his work. The son Joseph testified, in substance, that on one occasion he thanked the defendant for being allowed to keep his boat there, and that the defendant replied, "It is all right as long as Roose says so. He has charge of the place." He further testified that he kept the boat there afterwards.

The plaintiff testified, in substance, that on the morning of the day his intestate was shot he left Boston about 2:30 A.M. accompanied by his two sons; that he left Joseph on Calf Island and Vittorio on Middle Brewster about 5 A.M.; that Vittorio had a bag with him, and he gave him

a message for Roose; that he then went to the end of Big Brewster; that about 7 A.M. as he was ready to leave he called to Middle Brewster and Vittorio answered and said: "See who is in there. They have shot me"; that one Reekast came and the plaintiff took the injured boy to Boston Light; that on the way there the boy said, "I went to speak to Mr. Roose, and I wanted to get a drink of water . . . but . . . the minute I touched the window I was shot . . ."; that "He said that he shook the window . . . that he grabbed the knob of the door and he shook it and it was locked." The injured boy died soon after reaching Boston Light. There were other statements of a similar nature made by the deceased and testified to by Reekast, who said that he asked him how it happened and Vittorio replied, "Somebody shot me . . . . Yes, through the window"; this witness asked him "Did you break in?" and he said "No . . . . I knocked three times at the door . . . . I wanted water, and nobody answered the door . . . . I saw the window was open. I went to the window and raised it and somebody shot me."

The chief of police of Hull testified that he made an examination of the premises where the deceased was shot on the same morning about 9:50 o'clock; that the window was broken in the cottage on the back part of the piazza; that there was blood on the floor of the piazza; that the window was open just enough for him to get his fingers under it but that he could not raise it any higher; that a shade was down over the window, and a towel hung up on the side of the window which covered a cord; that there was a hole in the shade; that the end of the muzzle of the rifle was twenty-three inches from the window; that there was a board, the upper end of which had a notch in it to hold the gun in position; that there was a string attached to the trigger which ran back to a pulley on the sink, then up to a corner of the ceiling and down to the corner of the window where it was attached to a screw-eye; that if any one attempted to raise the window at all the gun would be discharged; that there was an empty shell in the gun and a bullet was found seventy-five to eighty feet back of the cottage near

a spot or mark on a ledge which apparently was made by the bullet. There was no evidence that Roose was on the island when the plaintiff's intestate was shot.

The defendant testified that at the time of the shooting he was at his summer home in Nantucket; that he did not own the rifle or know that it was on the island; that he never had a rifle there, and did not know that Roose had one; that he had no knowledge of the contrivance which had been placed in the cottage and never saw it until it was produced in court at the hearing when Roose was charged with manslaughter. Roose pleaded guilty to an indictment for that offence.

At the close of the evidence for the plaintiff the defendant rested and filed a motion for a directed verdict on each count. The motion was denied subject to the defendant's exception.

The ground of liability alleged in each count is based upon the wilful, wanton or reckless act of the defendant or of his agent or servant while engaged in his business. No liability could be founded upon either ordinary or gross negligence. *O'Leary* v. *Fash*, 245 Mass. 123, and cases cited. The cause of action rests wholly upon the allegations of wilful, wanton and reckless conduct of Roose for which the defendant is alleged to be responsible. It is conceded by the defendant that the setting up of this gun could be found to be a wilful, reckless and wanton act. If it could be found from the evidence that the boy in going to the island to gather shellfish was a licensee, he could not exceed the permission given him by Roose or the defendant. The license did not authorize him to endeavor to raise the window or to attempt to enter the cottage, and in making that attempt he became a trespasser as to whom no duty was owed except to refrain from wilfully and wantonly injuring him. It is a well established principle of law that no one can be justified in wilfully inflicting injury on another. A wilful and reckless act done with the deliberate intention of doing harm to a trespasser creates a ground of liability for the harmful consequences of such act. If a person is a trespasser, the only duty the proprietor has

toward him "is not maliciously to injure him: he may not shoot him; he may not set a spring gun, for that is just to arrange to shoot him without personally firing the shot." *Robert Addie & Sons (Collieries), Ltd.* v. *Dumbreck,* [1929] A. C. 358, 376. *Bird* v. *Holbrook,* 4 Bing. 628. It is settled that a master is liable for the acts of his servant done recklessly or wilfully in the course of his employment. *Aiken* v. *Holyoke Street Railway,* 184 Mass. 269. *Romana* v. *Boston Elevated Railway,* 218 Mass. 76. *O'Leary* v. *Fash,* 245 Mass. 123. *Murphy* v. *Huntley,* 251 Mass. 555.

It is the contention of the plaintiff that Roose was the defendant's servant and agent, that he was a caretaker of the defendant's entire property on the island, and that the defendant was liable for the acts of Roose in setting up the spring gun or trap, by the discharge of which the deceased met his death. It is the contention of the defendant that Roose was employed by him only to care for and sail his boat, and to make certain specific repairs upon the buildings on the island. If we assume upon the meager evidence that Roose was a caretaker, having general charge of the defendant's entire property on Middle Brewster, the question remains whether the act of Roose in setting up this gun for the protection of the defendant's property could be found to have been within the scope of his employment as the defendant's servant or agent. It is settled that, if the act of the servant or agent is done in the execution of the authority given him by the master and for the purpose of performing what he was directed to do, the master is responsible whether the wrong done be occasioned by negligence or by a wanton and wilful purpose to accomplish his business in an unlawful manner; but if the servant or agent does a wrongful act without authority and not for the purpose of executing the orders or doing the work of his master, the latter is not responsible therefor. *Howe* v. *Newmarch,* 12 Allen, 49. *Levi* v. *Brooks,* 121 Mass. 501, 505. *Smith* v. *Peach,* 200 Mass. 504. *Lamanna* v. *American Express Co.* 230 Mass. 564. *Douglas* v. *Holyoke Machine Co.* 233 Mass. 573, 576. *Zerngis* v. *H. P. Hood & Sons,* 255 Mass. 603, 605. No contention is made that the

defendant had any knowledge that this gun had been placed in the cottage until after it had been discharged and the plaintiff's intestate had received a fatal injury. If it be assumed that Roose was placed in general charge of the defendant's property on the island, it cannot properly be inferred that the act of Roose in setting up the gun was incidental to his authority to protect the property. It cannot be found that his act was done in the course of his master's work. It is manifest that the act was wholly outside any authority delegated by the defendant to him. *Douglas* v. *Holyoke Machine Co.* 233 Mass. 573, and cases cited at page 577. *Commonwealth* v. *Briant,* 142 Mass. 463. *Commonwealth* v. *Stevenson,* 142 Mass. 466. *Brown* v. *Boston Ice Co.* 178 Mass. 108. *O'Leary* v. *Fash,* 245 Mass. 123. An employer normally would have no reason to expect that his employee would commit murder in the protection of the employer's property. There is no evidence of any direct or implied authority given by the defendant to Roose to resort to wicked and inhuman means of protecting the defendant's property. *Strader's Admrs.* v. *Lexington Hydraulic & Manuf. Co.* 146 Ky. 580. *Craig's Admx.* v. *Kentucky Utilities Co.* 183 Ky. 274. *Kaiser* v. *McLean,* 20 App. Div. (N. Y.) 326. "A master is not responsible for a wrongful act done by his servant unless it is done in the course of his employment. It is deemed to be so done if it is either (*a*) a wrongful act authorized by the master, or (*b*) a wrongful and unauthorized mode of doing some act authorized by the master." *Poland* v. *John Parr & Sons,* [1927] 1 K. B. 236, 240. The defendant is no more liable for the death of the plaintiff's intestate than he would be if Roose had held the gun and, fired it. See *United Zinc & Chemical Co.* v. *Britt,* 258 U. S. 268. *Palmer* v. *Gordon,* 173 Mass. 410, and *Ryan* v. *Marren,* 216 Mass. 556, cited by the plaintiff, are distinguishable in their facts from the case at bar. In *Murphy* v. *Bay State Wine & Spirit Co.* 212 Mass. 285, also cited by the plaintiff, it could have been found that the servant of the defendant acted within the scope of his employment. The conclusion that the defendant cannot be held liable in the circumstances is supported by

the weight of authority in other jurisdictions. In addition to cases already cited, see *Bowen* v. *Illinois Central Railroad,* 69 C. C. A. 444; *Holler* v. *P. Sanford Ross, Inc.* 39 Vroom, 324; *Casale* v. *Director General of Railroads,* 94 N. J. L. 398; *Turner* v. *American District Telegraph & Messenger Co.* 94 Conn. 707. See cases collected in 10 Am. L. R. 1090 *et seq.*

No one of the cases cited by the plaintiff is at variance with what is here decided.

It is the contention of the defendant that upon the enactment of St. 1918, c. 179, by which Middle Brewster Island was ceded by this Commonwealth to the Federal government, the courts of Massachusetts have no jurisdiction to entertain the action. The ultimate decision on the merits must be against the plaintiff, therefore we have not considered that question. As the judgment will be the same, there seems to be no objection to stating the grounds of substantive law which support the result. *Commonwealth* v. *McNary,* 246 Mass. 46, and cases cited at page 48. *Central Trust Co.* v. *Howard, ante,* 153, 158. The defendant's motion for a directed verdict should have been granted. The entry must be

*Exceptions sustained.*
*Judgment for defendant.*