Argued December 5; affirmed December 31, 1934

# GENERAL CONSTRUCTION CO. *v.* FISHER ET AL.

(39 P. (2d) 358)

*W. S. Greathouse,* of Seattle, Wash. (Eggerman & Rosling, of Seattle, Wash., on the brief), for appellant.

*Willis S. Moore,* Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for respondents.

CAMPBELL, J. Plaintiff, a corporation, organized under the laws of the state of Washington, is engaged in the general contracting business. It is duly qualified to do business in the state of Oregon and maintains an office and a resident agent in the city of Portland. On June 16, 1928, it entered into a contract with the United States government to furnish labor and material for the construction of the Owyhee dam and irrigation works in connection with the Owyhee irrigation project in eastern Oregon, and shortly thereafter proceeded with the work called for in said contract. There was a further contract between the same parties in connection with the same work, dated January 20, 1932. The work was being done through the Department of the Interior of the United States by virtue of the laws of the United States and the state of Oregon relating to reclamation and irrigation of arid lands in the state of Oregon. The only net income received by plaintiff from its operations in Oregon for the years 1929, 1930, 1931 and 1932, was derived from the contracts with the United States government in the construction of the said irrigation project. The Oregon tax commission exacted from plaintiff the sum of $28,-108.83 on April 29, 1933, the sum of $15,391.56 on May 15, 1933, and the sum of $38,549.89 on November 15, 1933, being the tax levied upon the income of plaintiff from its operations in Oregon during the years 1929, 1930, 1931 and 1932, required by the laws of Oregon (Chap. 427, Oregon Laws, 1929, as amended by Oregon Laws, 1931, Chap. 273). These taxes were paid under protest, and, as plaintiff alleges in its complaint, to prevent levy being made on certain machinery and equipment necessarily used by it in performing its contract with the United States government.

Within one year from the time of filing its tax return, plaintiff applied to the tax commission for a

revision of its tax. Upon its application the tax commission held a hearing and on November 10, 1933, entered an order denying any revision of said tax.

On December 9, 1933, plaintiff filed its complaint in the instant case to recover said amount of taxes paid with interest thereon from the date of payment. The complaint, in addition to the above facts, alleged that the Oregon Excise Law (Chap. 427, Oregon Laws, 1929; Oregon Code 1930, § 69-1301 to § 69-1330, inclusive, as amended by Chap. 273, Oregon Laws, 1931) imposing said tax, so far as it attempts to levy a tax on plaintiff's income derived from its operations under contract with the federal government, is unconstitutional and void as being: (1) An impairment of the obligations of a contract (Article 1, § 10, United States Constitution; Article 1, § 21, Oregon Constitution); (2) an unwarranted tax upon the functions of the federal government; (3) as granting unreasonable and arbitrary exemptions to certain corporations and associations in violation of Article 1, § 20, Article 1, § 32, and Article 9, § 1, of the Oregon Constitution.

Defendants filed a demurrer to the complaint on the grounds that it failed to state facts sufficient to constitute a cause of action. The demurrer was sustained and plaintiff refused to further plead. Judgment was thereupon entered in favor of defendants. Plaintiff appeals.

The questions presented by the brief of appellant are: Does the imposition of an excise tax by the state on the privilege of doing business at a profit within the state, based on the net income derived by a general contractor from its operations within the state, under federal contracts, impair the obligation of such contracts? Is the levying of such a tax an unwarranted interference with a function of the federal government?

The other questions are not presented by appellant's brief and under Rule 12 of this court no further notice need be taken thereof.

In 1929, the legislature of the state of Oregon enacted what is known as the "Excise Tax of 1929", which, as amended by Oregon Laws, 1931, Chap. 273, § 4, is as follows:

"Every mercantile, manufacturing and business corporation doing or authorized to do business within this state, except as hereinafter provided, shall annually pay to this state, for the privilege of carrying on or doing of business by it within this state, an excise tax according to or measured by its net income, to be computed in the manner hereinafter provided, at the rate of 5 per cent upon the basis of its net income for the year 1930, and at the rate of 8 per cent upon the basis of its net income for the year 1931 and for each year thereafter. Each corporation mentioned in this section shall be entitled to an offset against said tax in the amount of taxes assessed to and paid by it upon its personal property located in this state, but the offset shall not exceed 90 per cent of the said tax. Any corporation, entitled to the offset provided herein, shall attach to its return the official receipts for the personal property taxes which are used as such offset. The offset provided in this section shall not include any personal property taxes due prior to January 1, 1929. In any event each taxpayer named in sections 69-1303, 69-1304 and 69-1306, Oregon Code 1930, shall pay annually to the state for the said privilege, a minimum tax of $25; provided, that from and after December 31, 1931, such minimum tax shall be $10."

The act also defines what is meant by net income, and how the net income may be ascertained. From the gross income of the corporation the law permits the deduction of:

"(a) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on business, including a reasonable allowance for salaries or

other compensation for personal services actually rendered, and rentals or other payments required to be made as a condition to the continued use or possession for the business purposes of property to which the taxpayer has not taken or is not taking title or in which it has no equity.

(b) All interest or returns paid or accrued during the taxable year on indebtedness. The interest deduction upon deposits or withdrawable shares in building and loan associations, savings and loan associations and mutual savings banks shall not include the income on nonwithdrawable shares, nor amounts credited to undivided profits or surplus or contingent fund. The net income of each such bank or association, as returned under this act, shall not be less than the total amount so credited, or required by law to be credited, in the taxable year to such undivided profits, surplus and contingent fund.

(c) Except as otherwise provided in this act, taxes paid or accrued during the taxable year, other than taxes paid to the state under this act, and other than taxes on income or profits paid or accrued within the taxable year imposed by (1) the United States, (2) any foreign country, (3) this state or any state or territory or taxing subdivision thereof and other than taxes assessed against local benefits of a kind tending to increase the value of the property assessed, and other than property taxes, on account of which an offset for credit is allowed by section 69-1306, Oregon Code 1930.

(d) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in business.

(e) Debts ascertained to be worthless and charged off within the taxable year, or, under regulation by the commission, a reasonable addition to a reserve for bad debts.

(f) A reasonable allowance for the exhaustion, wear and tear and obsolescence of property used in the business may be deducted from gross income. The basis for determining the proportionate allowance for depreciation of property acquired prior to January 1, 1929,

shall be the fair market value on that date, when such value is less than cost.''

When plaintiff, as an independent contractor for gain, entered into a contract to perform labor and furnish materials to the federal government it did not thereby become a part of, or an instrumentality of, the United States government, and its property and right to conduct business within the state are not immune from taxation by the state wherein it is located in performing its contract: *Thompson v. Union Pacific Ry. Co.,* 9 Wall. 579 (19 L. Ed. 792) ; *Baltimore Shipbuilding and Dry Dock Company v. Baltimore,* 195 U. S. 375 (25 S. Ct. 50, 49 L. Ed. 242) ; *Metcalf v. Mitchell,* 269 U. S. 514 (46 S. Ct. 172, 70 L. Ed. 384) ; *Gromer v. Standard Dredging Company,* 224 U. S. 362 (32 S. Ct. 499, 56 L. Ed. 801). In the last case cited, Porto Rico levied a tax on some property owned and operated by a contractor in carrying out his contract with the United States in improving the harbor of a city (a work exclusively within the governmental jurisdiction of the United States and for the benefit of the general public). It was contended by plaintiff therein that the property was not subject to taxation by Porto Rico while employed by it in performance of its said contract and within said harbor. The court in the prevailing opinion said:

''It is not clear what is meant by the allegation. So far as it means that the property is an instrument of the national government and not subject, therefore, to local taxation, the contention cannot prevail.''

In the dissenting opinion, written by Mr. Justice Day and concurred in by Justices Hughes and Lamar, it was said:

''We agree with the decision of the court that the Territory of Porto Rico has jurisdiction for taxing

purposes over the harbor and waters under question and that the use of the property for government purposes does not exempt it from taxation, and therefore do not dissent from anything that is said in the opinion of the court upon those subjects.''

Thus we have the unanimous opinion of the court on this matter. Indeed the principles therein announced would seem to apply with greater force in the instant case where the work being done by the federal government, although a governmental function, was in the nature of a private enterprise carried on for the benefit of those who would eventually be called upon to pay. for it—the settlers on the land embraced within the irrigation project.

On the same principle the property of plaintiff within the state of Oregon was subject to taxation by the state even though used in performing a contract with the federal government. The property thus being taxable, the privilege of using it for such purposes, based on the net income derived from its use is also taxable, whether called a property tax, a privilege tax, or an income tax. In the final analysis it all amounts to the same thing. It was the property of plaintiff that plaintiff alleges was to be taken for the tax.

The principle of immunity from state or local taxation of the property and instrumentalities of the United States is generally based upon the direct ownership, or use and control of the property by the United States. Such immunity does not extend to the property of an independent contractor for gain even should it be used in carrying out a contract with the United States. The same principle obtains regarding taxation by the United States of incomes derived by persons and corporations from the state: *Metcalf v. Mitchell,* supra.

Plaintiff also contends .that the imposition of this tax on it tends to hamper and delay the federal govern-

ment in carrying out its contracts. The federal government is not complaining. Neither has it commissioned the plaintiff to intervene in its behalf. Nor does plaintiff seek to recover the tax paid for the benefit of the United States. Every tax levied has some remote tendency to interfere with the contractual relations between parties, but that is no reason why such parties should not contribute their just proportion to the expenses of maintaining the government from which they demand protection for their property and privileges. In the instant case the work performed by plaintiff was undoubtedly let to the lowest responsible bidder. We cannot see how the tax complained of in any way impaired said contract or hindered the federal government in its governmental functions: *Willicuts v. Bunn,* 282 U. S. 216 (51 S. Ct. 125, 75 L. Ed. 304, 71 A. L. R. 1260); *Alward v. Johnson,* 282 U. S. 509 (51 S. Ct. 273, 75 L. Ed. 496, 75 A. L. R. 9); *Indian Territory I. O. Company v. Board of Equalization,* 288 U. S. 325 (53 S. Ct. 388, 77 L. Ed. 812); *McCallen v. Massachusetts,* 279 U. S. 620 (49 S. Ct. 432, 73 L. Ed. 874, 65 A. L. R. 866); *Jaybird Mining Company v. Weir,* 271 U. S. 609 (46 S. Ct. 592, 70 L. Ed. 1113); *Solitt & Son v. Commonwealth,* 161 Va. 854 (172 S. E. 290, 91 A. L. R. 774, and note).

It would serve no useful purpose to analyze and distinguish the many cases cited by able counsel for appellant. The basis of the decisions which counsel for appellant claims are in its favor is the fact that the property attempted to be taxed was an actual instrumentality or agency of the federal government. The attempt to evade taxation has been before the appellate courts many times. The artful tax dodger has frequently sought the aid of the courts to be relieved of a just contribution to the maintenance of the government of which the court is a necessary part. But, as above an-

nounced, the general principle is that the state cannot levy a tax on an instrumentality of the United States and *vice versa.* The courts are not unanimous in their opinion as to what constitutes an agency or instrumentality of the government. The weight of authority would indicate that a corporation, contracting with the United States or the state as an independent contractor for gain, cannot claim immunity from taxation by reason of its furnishing labor and services either to the United States or to the state unless some statute specifically exempts such contractor from taxation in regard to the particular contract involved.

The judgment of the lower court will be affirmed.

It is so ordered.