Argued April 17, affirmed May 31, petition for rehearing denied
September 12, 1951

# SHORT *v.* D. R. B. LOGGING CO.

232 P. 2d 70
235 P. 2d 340

*William S. Fort* argued the cause for appellant. On the brief were Husband, Fort & Johnson, of Eugene.

*Sidney E. Thwing* argued the cause for respondent. On the brief were Evans & Thwing, of Eugene.

Before BRAND, Chief Justice, and HAY, ROSSMAN, LUSK and WARNER, Justices.

HAY, J.

This is an action for damages for personal injuries allegedly caused by defendant's negligence. The plaintiff, in August, 1946, was the owner and driver of a logging truck and trailer. Defendant is a Michigan corporation, and, at that time, was engaged in logging near Wolf Creek, in Lane County. Another logging concern, known as Markham Logging Company, was also logging in the same vicinity. Each maintained and operated at its respective log landing a derrick for loading logs on trucks, commonly called a loading pole, which consists of a vertical spar or mast, having a boom attached at its lower end, and carrying a hoisting tackle. The loading poles were situated between six and seven hundred feet distant from each other. The two concerns used the same logging road for hauling logs, but were entirely separate organizations.

Plaintiff had had many years of experience in various branches of the lumbering industry, and had been engaged in log hauling for more than five years immediately prior to August 14, 1946. On that date, he entered into contractual arrangements to haul logs for Markham Logging Company from its loading pole to different sawmills in or about Eugene. One Fred

Hockley was at that time driving a logging truck for another Markham contract hauler. Plaintiff and Hockley had each hauled two loads of logs for Markham on that day, and were returning late in the afternoon to the Markham landing to pick up a third load. Before they arrived there, however, the loading crew had quit for the day, and they met the crew on the road on their way home. Some days previously, Mr. J. E. Markham, owner of Markham Logging Company, had told the manager of defendant company that the Markham logs had been "loaded out," that they were going to have "extra" trucks on hand, and that he did not know what to do with them. Defendant's manager thereupon told him: "Send them down our way; we can use them; we need the trucks." When plaintiff and Hockley met the Markham loading crew on the road, Mr. J. E. Markham, who was with the crew, told them that if they would go on up the hill they could load out at the defendant's loading pole. Hockley and plaintiff accordingly drove their trucks to the defendant's landing, with Hockley's truck in the lead. When plaintiff arrived at defendant's loading pole, Hockley's truck was already on the landing and in process of being loaded. Plaintiff was accompanied by his son, Donald, and both of them got out of plaintiff's truck and walked onto the landing to observe the loading operation. The loading was in charge of defendant's employee, George Myers, who operated the donkey engine which powered the hoisting apparatus. He was being assisted by another employee, Howard Fry, as head loader. The load which was in process of being loaded upon Hockley's truck consisted of a single large log. The donkey engine was standing a little way behind and to one side of the loading pole. The log

had been lifted from a log pile and placed upon Hockley's truck and trailer. Fry, the head loader, just before the log was lifted from the log pile, had observed plaintiff and his son approaching the landing, and had shouted a warning to them, but plaintiff did not hear him. Hockley had left the cab of his truck, and was standing to the left of the cab upon a small pile of logs which was lying parallel to the truck and trailer. Plaintiff and his son ranged alongside of Hockley upon the same pile of logs. "One-log" loads are secured to the logging truck by means of a binding chain or chains passed around the log and the truck body. In addition thereto, metal wedges, called "cheese blocks," which are attached to the body of the truck by adjustable chains, are used to keep the log in place. The cheese blocks were adjusted by the head loader, and the log was then lowered into place. Thereupon the loading line was slackened, and the sling, by means of which the log had been attached to the loading tongs, slipped off the tongs and fell to the ground. The log then rested upon the truck and trailer bunks and between the cheese blocks, although one of the trailer cheese blocks required further adjustment.

It was the duty of the truck driver to secure the load with the binding chain. Hockley, who had not had very much experience in log hauling and had handled few one-log loads, asked plaintiff's advice as to the best method of binding the load. Fry, the head loader, was at that time at the opposite side of the trailer from where plaintiff was standing, and was concealed from plaintiff's view. Without warning to plaintiff, Fry took hold of the chain which controlled the trailer cheese block which needed to be adjusted and pulled it, for the purpose of making the adjust-

ment. While he was doing this, the rear end of the log suddenly slid over the cheese block and fell to the ground, striking the end of the little pile of logs upon the opposite end of which plaintiff, his son, and Hockley were standing. The impact violently dislodged the logs, and threw the three men into the air. Hockley and plaintiff's son were not hurt thereby, but plaintiff received severe and permanent injuries.

When the log started to slide from the trailer, Fry shouted a warning, but the suddenness of the catastrophe made the warning of no avail.

Plaintiff brought this action against defendant to recover damages for his injuries. He charged defendant with negligence as follows: (1) In failing to provide a safe and adequate place for loading the truck, in that the landing was unlevel and the ground sloping; (2) in placing a large "one-load" log on the truck and trailer without first ascertaining whether the cheese blocks had been securely fastened; (3) in attempting to center a "one-load" log upon the trailer by knocking out the cheese block on the downhill side after the loading line and loading tongs had been removed from the log; (4) in attempting to center a "one-load" log upon the truck and trailer without the use of tongs, loading lines and donkey; (5) in knocking out the cheese block on the downhill side of a "one-log" loaded trailer, after the loading tongs and line had been removed from such load, being aware that plaintiff was standing on one end of a pile of logs, the other end of which was likely to be struck by the log if it rolled or slid off the trailer, and without giving plaintiff any warning; and (6) in attempting to shift and center the "one-load" log upon the truck and trailer without first attaching a binder chain about the log.

Defendant made general denial, and affirmatively pleaded contributory negligence on the part of plaintiff in that: (1) He negligently entered upon premises possessed and controlled by defendant in immediate proximity to the loading operation; (2) he failed and neglected to look out for, observe and stay at a safe distance from defendant's loading machinery and equipment; (3) although he knew, or in the exercise of reasonable care and caution should have known, that the loading operation was in progress, he failed and neglected to stay and remain a safe distance therefrom.

The cause was tried by the court and a jury. After defendant had rested, it moved the court to direct a verdict in its favor on the ground that plaintiff had not sustained any of the allegations of negligence set forth in his complaint, or furnished any evidence at all in support thereof, and on the further ground that it affirmatively appeared from plaintiff's own case that he was guilty of contributory negligence which proximately contributed to the accident. The court allowed the motion, and directed the jury to return a verdict for the defendant. This was done, and judgment for defendant was entered. accordingly, from which judgment plaintiff has appealed to this court.

The principal assignments of error are directed against the allowance of the motion for a directed verdict. Other assignments challenge the court's ruling upon objections to a question propounded to an expert witness, and its rejection of an offer of proof.

■ In passing formally upon the motion, the court confined itself to ruling upon the second ground, viz., that it affirmatively appeared from plaintiff's own case that he was guilty of negligence which proximately contributed to the accident. However, the record shows

that while the motion was being argued the trial judge made specific reference to five of the six specifications of negligence alleged in the complaint, and indicated that he was of the opinion that sufficient evidence had not been adduced to carry the case to the jury upon those specifications. Our own initial reading of the testimony tended to confirm the trial court's view as to the particular specifications which he had discussed, and even as to the one remaining specification. We felt that, if in fact the evidence failed to establish any of the specifications of negligence, consideration of the second ground of the motion would be unnecessary. We have accordingly considered carefully the plaintiff's evidence, viewed in the light most favorable to plaintiff, and are of the opinion that it was not sufficient to sustain any of the specifications of negligence charged against defendant.

We shall now consider the specifications separately. There was no evidence whatever that the landing was unlevel and the ground sloping; in fact the evidence was to the contrary. The charge of negligence in placing the log upon the truck and trailer without first ascertaining whether the cheese blocks had been securely fastened, was contradicted by evidence which showed that, before a log is finally lowered into place, the loader adjusts the cheese blocks as nearly as he is able to estimate or judge of where they should be to receive the log, but that readjustment frequently is necessary after the log is in place. The charge of attempting to center the log upon the trailer by knocking out the cheese block on the downhill side after the loading line and loading tongs had been removed, was not sustained by the evidence, which showed that the landing was level, and that therefore there was no downhill side.

The allegation that the defendant attempted to center the log upon the truck and trailer without the use of tongs, loading lines and donkey was not sustained, there having been no evidence whatever that the defendant attempted to "center" the log or to move it in any manner after it was lowered into place. The allegation that defendant knocked out the cheese block on the downhill side of the load after the loading tongs and line had been removed, being aware that plaintiff was standing on one end of a pile of logs, the other end of which was likely to be struck by the log if it rolled or slid off the trailer, and without giving plaintiff any warning, was contradicted, first, by the fact that, as stated, there was no evidence that there was any downhill side of the landing; second, by lack of evidence that defendant knew that plaintiff was standing on the end of the pile of small logs at the time when the log slid from the trailer; and third, by lack of evidence that defendant knocked out any cheese block. The evidence was that defendant's employee was endeavoring to adjust a cheese block by tightening it rather than "knocking it out". Finally, there was no evidence to sustain the charge that defendant attempted to shift and center the log upon the truck and trailer without first attaching the binder chain about the log. As we have said, the evidence did not show that defendant attempted to "center" or move the log at all. Moreover, the evidence was that the placing of a binder chain about the log was the duty of the log hauler, who, in this instance, was an employee of an independent contractor who had no connection with defendant, and that the practice is not to attach the chain until after the truck has been removed from the landing.

Our conclusion being, therefore, that plaintiff failed

to prove his case, it follows that, in directing a verdict for the defendant, the trial court did not err. We need not pass upon the correctness of the court's ruling on the second ground of the motion, viz., that it affirmatively appeared from plaintiff's own case that he was guilty of negligence which proximately contributed to the accident. We do not wish it to be inferred, however, that we believe that the trial court erred in sustaining the motion upon the second ground. The extent of our finding is simply that plaintiff's failure of proof renders it unnecessary for us to express an opinion upon the ruling on the other ground of the motion. We do not reach the remaining errors assigned.

The judgment is affirmed.

### On Petition for Rehearing

*Husband, Fort & Johnson,* of Eugene, for the petition.

*Evans & Thwing,* of Eugene, contra.

Before Brand, Chief Justice, and Hay, Rossman, Lusk and Warner, Justices.

Denied.

HAY, J.

Plaintiff has petitioned for a rehearing.

He contends that we erred in holding that there was no proof of negligence, and in that connection says that *res ipsa loquitur* was applicable.

■■ Sufficiency of the evidence was not argued by plaintiff either on brief or orally. His counsel explained that they acted upon the assumption (they put it, gracefully, "erroneous assumption") that, since

the trial judge did not direct the verdict upon the ground of insufficiency of proof of negligence, such ground could not properly be considered upon plaintiff's appeal. This assumption was incorrect. An appellant in such a situation has the burden of showing that the allowance of a motion for directed verdict was not justified upon any of the grounds stated, whether passed upon by the trial court or not. *Bohart v. Parker,* 76 Or. 371, 377, 147 P. 188, 149 P. 85; 3 Am. Jur., Appeal and Error, § 828.

■ The question of the applicability of *res ipsa loquitur* was not argued, and perhaps we should be warranted in considering it as having been waived. 3 Am. Jur., Appeal and Error, §§ 770, 776; *General Construction Co. v. Fisher,* 149 Or. 84, 87, 39 P. 2d 358, 97 A.L.R. 1252, ap. dism., 295 U.S. 715, 79 L. ed. 1671, 55 S. Ct. 646, reh. den., 295 U.S. 768, 79 L. ed. 1709, 55 S. Ct. 828; *Longbotham v. Takeoka et al.,* 115 Or. 608, 617, 239 P. 105, 43 A.L.R. 1285. However, as our opinion held that there was no proof of negligence, it may be that we should have considered the applicability of *res ipsa* of our own motion. We shall now do so.

■■ The rule in Oregon is that, where a plaintiff makes specific allegations of negligence in his complaint, he may invoke *res ipsa loquitur,* if applicable, as to such specific acts. *Boyd v. Portland Electric Co.,* 40 Or. 126, 132, 66 P. 576, 57 L.R.A. 619; *Cosgrove v. Tracy,* 156 Or. 1, 12, 64 P. 2d 1321; *Suko v. Northwestern Ice Co.,* 166 Or. 557, 566, 113 P. 2d 209; 38 Am. Jur., Negligence, § 305, n. 15. Lest we be misunderstood, we hasten to add that, of course, he may, if he wishes, allege negligence both generally and specifically, and invoke *res ipsa,* if applicable, as to either or both.

■ Plaintiff here, in addition to specific acts of negli-

gence, attempted to allege negligence generally. He says that we overlooked such general allegations, but such is not the case. The allegations in question simply stated, in effect, that defendant had placed a small pile of logs upon the ground to the left of the truck and trailer; that "plaintiff was standing at the end of these logs, fartherest [sic] away from the loading operations"; and that defendant so carelessly and negligently conducted its loading operations as to cause and permit a log to slide off the trailer bunks "directly onto the" small pile of logs, "and the force of the impact therefrom threw said logs into and against plaintiff * * * ." These were not general allegations of negligence, but rather allegations of general negligence under specific circumstances. The allegations which implied that plaintiff was standing clear of the small pile of logs, and that the impact threw the logs against his person, were completely disproved by the evidence, including plaintiff's own testimony.

■ Whether or not *res ipsa* is applicable must be determined by the facts and circumstances of any given case. 65 C.J.S., Negligence, § 220 (10), n. 39; 38 Am. Jur., Negligence, § 355, n. 12. The requisite facts and circumstances must be shown by the evidence. *Dunning v. Northwestern Electric Co.*, 186 Or. 379, 429, 199 P. 2d 648, 206 P. 2d 1177; *Gow v. Multnomah Hotel Co.*, 191 Or. 45, 224 P. 2d 552, 555.

■ Plaintiff was injured by the impact of the falling log upon the log pile on which he was standing. He was upon defendant's premises by implied invitation, but his invitation certainly did not authorize him to enter the actual loading area while another driver's truck was being loaded. The logs in the small pile were used,

when necessary, to complete loads. Plaintiff climbed upon the pile to advise the other driver as to the best method of binding a one-log load. He did not owe either the other driver or defendant any duty in this regard. His complaint admits that the log pile was a place of danger. By entering an area not within the terms of his implied invitation, plaintiff became, at the most, a mere licensee. *Napier v. First Congregational Church,* 157 Or. 110, 113, 70 P. 2d 43; *Christensen v. Weyerhaeuser Timber Co.,* 16 Wash. 2d 424, 133 P. 2d 797, 801; *Ciarmataro v. Adams,* 275 Mass. 521, 176 N.E. 610, 75 A.L.R. 1171, 1174; 38 Am. Jur., Negligence, § 100; 2 Restatement, Torts, § 343, Comment b. A mere licensee cannot invoke *res ipsa loquitur. Carr v. Oregon-Washington R. & N. Co.,* 123 Or. 259, 279, 261 P. 899, 60 A.L.R. 1434; Prosser, Res Ipsa Loquitur in California, 37 Cal. L. Rev. 183, 208 (note 150).

Plaintiff, having voluntarily and unnecessarily brought himself within the danger zone of the loading operation, being aware of the dangers incident thereto, his action in that regard, we think, created or brought about a condition which resulted in his injury. This brought the case within one of the limitations upon the applicability of *res ipsa loquitur.* "The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured." Wigmore, Evidence, 3d ed., Vol. IX, p. 380. We may assume that, normally, such limitation would have reference to a plaintiff's voluntary participation with the defendant in the operation or control of the injurious machine or thing, but we think that it is also applicable to a situation such as we have here. Plaintiff had the opportunity of making an intelligent choice as to whether to remain in a place of safety

without the danger zone or to go within it. For his own convenience and purposes he chose to go within it. There was no evidence that defendant knew of plaintiff's dangerous situation in time to have given him adequate warning or otherwise enabled him to have avoided injury.

The facts to which we have referred were shown by the evidence at the time when the sufficiency thereof was challenged by defendant's motion for nonsuit. We have recited them, not for the purpose of showing that plaintiff was guilty of contributory negligence (although they do tend to show that he was so guilty) but simply because, in our opinion, they prevented him from invoking *res ipsa loquitur* to raise an inference of negligence.

Other errors are suggested by plaintiff, but, in our view of the evidence, none of them are of sufficient merit to require further discussion.

The petition for rehearing is denied.

BRAND, C. J., specially concurring.

I concur in the result. I confess to having had grave doubts as to the propriety of the action of the trial court in directing a verdict for the defendant. The doubt is somewhat fortified by the difficulty which this court has had in arriving at a satisfactory basis for the decision. Our first opinion is based solely on the absence of any substantial evidence of negligence by the defendant. The second affirms the judgment on the additional ground that plaintiff voluntarily brought himself within a danger zone and assumed the risk; in substance, that plaintiff was guilty of contributory negligence. On the facts the case is at least as close a one as will ever warrant an order directing a verdict.

I agree that this is not a proper case for applying the doctrine of res ipsa loquitur, but for reasons entirely different from those asserted in the opinion of the court on rehearing. Res ipsa loquitur is merely a rule concerning possible inferences which may be drawn from facts proven. It takes a case past a nonsuit. It concerns the sufficiency of evidence of negligence by a defendant. It is not normally concerned with any question of contributory negligence by the plaintiff. The authorities are fully discussed in *Ritchie v. Thomas et al.,* 190 Or. 95, 224 P. 2d 543, and *Gow v. Multnomah Hotel, Inc., et al.,* 191 Or. 45, 224 P. 2d 552. Briefly summarized, the rule is that where the plaintiff does not participate in the activity, normally the operation of some instrumentality by the defendant, the actions of the plaintiff have nothing to do with the applicability of the rule. If a plaintiff is guilty of independent contributory negligence he will of course be barred from recovery, but not because of any rule of res ipsa. If, on the other hand, the plaintiff participates in the operation of the activity of the defendant which causes the mishap—if he as well as the defendant is a participant in operating the instrumentality, then he must "eliminate himself as a responsible cause of the accident." This is not because of any general rule that a plaintiff must negative contributory negligence in his case in chief, but is because, though the falling of a log or a barrel or the breaking of a chair may speak of negligence, it does not speak of negligence by the defendant if either of two people, the defendant or the plaintiff, may have caused the log or the barrel to fall or the chair to break. Under such circumstances it is held that *if the plaintiff would invoke the doctrine of res ipsa loquitur* he must eliminate himself as a responsible cause of the *event* which resulted in the

injury. In the case at bar, the plaintiff did not partici-
pate in any way in the operation which caused the log
to fall from the truck. To be sure there was evidence
from which a jury could well have found him guilty
of contributory negligence which would bar his re-
covery whether the defendant was or was not also
negligent. But since plaintiff did not participate in the
operation which caused the log to fall, it is beside the
point to consider whether he was a "responsible cause
of the accident" in *passing upon the question of the
applicability of res ipsa loquitur*. What plaintiff did
is relevant solely to the issue of contributory negli-
gence. His action may have been a contributing cause
of his own injury but it was not a cause of the falling
of the log. To hold that res ipsa loquitur cannot apply
because plaintiff was a responsible cause of his own
injury though not of the falling of the log is the same
as holding that there was no evidence of the negligence
of the defendant because the plaintiff was guilty of
contributory negligence. I cannot concur in that rea-
soning.

The majority employs a second line of argument,
substantially as follows: Plaintiff was an invitee on
the premises but the terms of his invitation did not
authorize him to risk his safety by moving into danger-
ous proximity to the truck and log. When he did so
he became at most a mere licensee to whom the defend-
ant owed no duty except to avoid wilful or wanton
injury. The argument proceeds by citing the rule that
a mere licensee cannot invoke res ipsa loquitur and
the conclusion is reached that the doctrine is therefore
not applicable in this case. At this point we must ask,
did the plaintiff by his acts change his status from
invitee to licensee or did he merely become guilty of
contributory negligence? Plaintiff was invited for

business purposes to enter premises which were in the possession of the defendant. If he ceased to be an invitee and became a mere licensee or perhaps a trespasser, when did the transformation occur? In approaching the truck, how many steps did he take as invitee and how many as mere licensee? When injured, plaintiff was not standing opposite the log which fell. He was to the left of and immediately adjacent to the cab of the truck. He was in front of and beyond any place on which the log could have fallen or did fall. Plaintiff was not hit by that log. The rear end of that log fell on the far end of a small pile of logs on the near end of which plaintiff was standing. He was hurt by being catapulted into the air. In this complicated situation it would appear to be improper for a court to say as a matter of law when and where, if at all, plaintiff ceased to be an invitee. In my opinion he never ceased. He was an invitee and perhaps a negligent one; nothing more. An invitee may conduct himself negligently. Secondly, even if he was a bare licensee or even if he became a trespasser, this court should not under circumstances here present hold that defendant owed him no duty except to avoid wilful or wanton injury. The reason res ipsa loquitur has been held inapplicable when a bare licensee or trespasser is injured is made clear in the passage from Dean Prosser, cited by the majority. ''Res ipsa loquitur leads only to the conclusion that the defendant has not exercised reasonable care. It is not in itself any proof that he was under any duty to do so.'' Res Ipsa Loquitur in California, 37 Cal. L. Rev. at 208. If in *this* case defendant owed no duty of reasonable care because plaintiff was a mere licensee, then res ipsa would not apply because it would only lead to a conclusion which was immaterial. There may be circumstances in which a

defendant owes no duty of reasonable care to a licensee, as for example when he neither knows nor has reason to know that the licensee or trespasser is on the premises, and the injury is due to the condition of the premises. The courts have so held. But there is, and in my opinion should be, a clear exception to this rule. It is set forth in the Restatement of Torts, Vol. 2, § 336, p. 911, as follows:

> "A possessor of land who knows that another is trespassing thereon or from facts known to him should know or believe that another is or may be doing so, is subject to liability for bodily harm thereafter caused to the trespasser by the possessor's failure to carry on his activities upon the land with reasonable care for the trespasser's safety."

The rule of the Restatement is both logical and humane and we should not reject it in this case. If the rule applies to a trespasser, it applies a fortiori to a licensee. The presence of the plaintiff on the land was known to defendant's agents. They invited him there and they had a duty, in carrying on *current activities,* to exercise reasonable care not to injure him. I am not saying that there is any evidence that defendant violated any duty of reasonable care owed to plaintiff. I am saying that the argument employed by the majority and by which it seeks to demonstrate that res ipsa loquitur does not apply is based on a misinterpretation of that rule. I accept as correct the presentation of facts in both the original opinion and in the one on petition for rehearing. While the issue is close, I think we can properly say that though defendant knew of plaintiff's presence on the general premises and so had a general duty of due care in carrying on its activities, nevertheless defendant did

not know that plaintiff had placed himself in a position of danger in time to have prevented the accident. Defendant had no duty to anticipate that plaintiff would voluntarily and negligently take up a dangerous position. Since it was not shown that at or before the critical time, defendant knew or ought to have known of plaintiff's danger, it cannot be said to have negligently violated any duty of care *owing to the plaintiff*. The falling of the log may itself speak of carelessness but it does not speak of any negligent violation of any duty to plaintiff.

I am content that the petition for rehearing be denied for the following reason: There is evidence that plaintiff was guilty of contributory negligence. If he was, then he cannot recover, no matter how carelessly the defendant handled the log. If plaintiff was guilty of contributory negligence by assuming a place of danger, then conceivably it could be argued that defendant should have known it and given timely warning if possible. But the negligence, if any, of defendant, would be immaterial as to the result, for plaintiff's negligence would have barred his recovery. On the other hand, if plaintiff was not guilty of contributory negligence, if he did not put himself in a place of obvious danger, then how could we say that the defendant was negligent in not exercising due care for a man who was in no apparent danger? The negligence, *if any,* of the defendant in this case cannot be inferred unless it is based on the fact first established of the contributory negligence of plaintiff.

Res ipsa loquitur does not apply and I agree that the petition for rehearing should be denied. If the case cannot be decided on these grounds, and I think it can, then surely we should have held in the first place that

both questions were for the jury. I have gone to these lengths in explaining my views because I believe that the law of negligence, and particularly of res ipsa loquitur, will be thrown into utter confusion and error if the court ultimately adheres to its present position.

LUSK, J., specially concurring.

The evidence shows that no employee of the defendant engaged in loading the truck knew (until it was too late to do anything about it) that the plaintiff had placed himself in a position where he was likely to be injured should the log fall. And, notwithstanding the plaintiff may have been an invitee, it cannot be said that the defendant should have anticipated that the plaintiff would use his invitation to put himself in a place of danger from which he could participate as a volunteer in the loading operation. Hence, it makes no difference, so far as the plaintiff's right to recover is concerned, whether the defendant used a wrong method in the loading operation or whether any other negligence charged against it has been shown either directly or by inference through an attempted application of the doctrine of *res ipsa loquitur*. Not having the knowledge which would give rise to a duty toward the plaintiff, the defendant, of course, violated no duty which it owed him, and the question whether it was otherwise or generally negligent becomes immaterial. To say this is also to say that *res ipsa* is not involved. To that extent I agree with the specially concurring opinion of the Chief Justice. This conclusion, if correct, as I think it is, suffices to dispose of the petition for a rehearing against the petitioner. I concur in its denial.